# KENNETH D. FELDER ET AL. *v.* SPEARMAN BUTLER

[No. 61, September Term, 1981.]

*Decided December 23, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Jeffrey D. Raden* for appellants.

*Edward H. Myer, 3rd,* with whom were *George F. Zverina* and *Barbour, Zverina & Myer, P.A.* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court. DAVIDSON, J., dissents and filed a dissenting opinion at page 184 *infra.*

The issue in this case is whether, in light of changes evolving in the common law since our decision in *State v. Hatfield,* 197 Md. 249, 78 A.2d 754 (1951), Maryland should now recognize a right of action in tort against a licensed vendor of intoxicating beverages for injuries negligently caused by an intoxicated patron to an innocent third party.

## I

The plaintiffs sued the defendant tavern owner in the Circuit Court for Charles County, alleging that on November 19, 1977, the defendant and his agents:

> "in the evening and until midnight . . . did cause and contribute to the intoxication of Madeline Cecelia Hawkins by negligently, carelessly, wrongfully and unlawfully selling [to her] intoxicating liquor, while she was then and there visibly under the influence of intoxicating beverages."

The declaration averred that at 12:15 A.M. on November 20, 1977, Hawkins drove her automobile across the lane of oncoming traffic and collided with a vehicle occupied by the plaintiffs; that Hawkins was then "intoxicated and visibly under the influence of intoxicating beverages and . . . was incompetent to properly drive and control her motor

vehicle due to the sale of intoxicating beverages to her by the Defendant"; and that as a direct and proximate result of the defendant's negligent and unlawful act in selling liquor to Hawkins, plaintiffs suffered severe bodily injuries.

The defendant demurred to the plaintiffs' declaration. Relying upon *State v. Hatfield, supra,* the tavern owner contended that the plaintiffs had no cause of action because the proximate cause of the collision was not the unlawful sale of liquor to Hawkins but her negligence in drinking it. The circuit court sustained the demurrer without leave to amend and the plaintiffs appealed to the Court of Special Appeals. We granted certiorari on our own motion prior to decision by the intermediate appellate court.

## II

In *State v. Hatfield, supra,* Maryland adopted the early common law rule that an innocent third party did not have a cause of action against a vendor of alcoholic beverages for injuries suffered as a result of the intoxication of the vendor's patron. In that case, the tavern owner was sued for damages under a declaration which alleged that he had knowingly sold intoxicating liquors to a minor in violation of a Maryland criminal statute which prohibited such sales to minors and intoxicated persons. The declaration averred that the defendant continued to sell liquor to the minor after he became intoxicated; that in the exercise of due care, the defendant should have known that the minor was intoxicated and unable to operate his automobile safely; that the defendant negligently and recklessly permitted the intoxicated minor patron to leave the premises and operate his automobile; and that as a direct result of the tavern owner's negligent and unlawful conduct, a collision occurred when the intoxicated minor negligently operated his vehicle and collided with the automobile driven by the decedent.

The defendant tavern owner demurred to the declaration on the ground that it failed to state a cause of action. The

demurrer was sustained without leave to amend, and we affirmed the judgment on appeal. The Court said:

> "Apart from statute, the common law knows no right of action against a seller of intoxicating liquors, as such, for 'causing' intoxication of the person whose negligent or wilful wrong has caused injury. Human beings, drunk or sober, are responsible for their own torts. The law (apart from statute) recognizes no relation of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor. . . .
>
> ". . . 'Under the common law it is not an actionable wrong either to sell or to give intoxicating liquors to an able-bodied man. . . . The common-law rule holds the man who drank the liquor liable, and considers the act of selling it as too remote to be a proximate cause of an injury caused by the negligent act of the purchaser of the drink.' " 197 Md. at 254-55; 78 A.2d at 756-57 (citations omitted).

In so holding, the Court in *Hatfield* noted that statutes existed in some states, although not in Maryland, creating a civil cause of action for damages against one selling alcohol to an intoxicated person who, as a result of such intoxication, negligently causes injury to innocent persons. The Court said that apart from statute, no cases existed which held "a seller of intoxicating liquor . . . liable for a tort of the buyer who drank the liquor." *Id.* at 255. The Court concluded its opinion with these observations:

> "[W]e should virtually usurp legislative power if we should declare plaintiff's contentions to be the law of Maryland. In the course of the last hundred years there probably has seldom, if ever, (except during prohibition) been a regular session of the General Assembly at which no liquor laws were passed. On few subjects are legislators kept better informed of legislation in other states. In the face of the flood of

civil damage laws enacted, amended and repealed in other states and the Volstead Act — and of the total absence of authority for such liability, apart from statute — the fact that there is now no such law in Maryland expresses the legislative intent as clearly and compellingly as affirmative legislation would." *Id.* at 256.

## III

The appellants correctly point out that in the thirty years since *Hatfield* was decided, a number of jurisdictions have departed from the early common law rule and have imposed civil liability, independent of statute, upon sellers of alcoholic beverages for damages caused by their intoxicated patrons. They urge that we abandon *Hatfield* and adopt the rationale of the new trend of cases which, applying traditional negligence principles, recognizes a cause of action brought against a tavern owner by a party injured as a result of negligent acts of a patron of the tavern to whom alcoholic beverages were sold while the patron was under the influence of intoxicating liquors.

Two cases launched the new trend — *Waynick v. Chicago's Last Department Store,* 269 F.2d 322 (7th Cir. 1959), and *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959). Both involved factual allegations similar to those in the case before us. *Waynick* rejected the view espoused in *Hatfield* that the sale of alcoholic beverages to an intoxicated person is a sale to "an able-bodied man." 269 F.2d at 325. Applying common law principles of negligence, the Court said:

"Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him. . . .

"One essential element in a tort is the existence of a duty imposed by statute or otherwise in favor of the party injured and on the party whose conduct

produces the injury. . . . The duty, breach of which may constitute negligence, may be a duty to the person injured as an individual, but that is not essential, since it is sufficient that the duty was owed to him as a member of a class or group. . . ." *Id.* at 325 (citations omitted).

Combining "[e]very person['s]" general duty of care with Illinois' criminal statute prohibiting sale of alcoholic beverages to intoxicated persons, the court held that the tavern owner's action in serving an intoxicated patron was a proximate cause of the plaintiff's ensuing injuries. *Id.* at 326. The court found no merit in the notion that the causal claim linking the plaintiff and the tavern owner was irreparably destroyed by the intervening negligent actions of the intoxicated patron.

*Rappaport* agreed with the holding in *Waynick* and expanded upon the reasoning underlying the imposition of civil liability on tavern owners. Support for the result reached in *Waynick* was present in comparable situations, the court indicated, where persons "whose unlawful and negligent conduct contributed with the negligent conduct of other tortfeasors in injuring innocent third parties," *id.* at 7, citing *Anderson v. Settergren,* 100 Minn. 294, 111 N.W. 279 (1907) (defendant who loaned gun and sold bullets to a minor held liable to third party injured by minor's negligence in using the gun); *Semeniuk v. Chentis,* 1 Ill. App. 2d 508, 117 N.E.2d 883 (1954) (sale of air rifle to child was a proximate cause of plaintiff's injuries; firing of the gun was not a superseding cause); and *Ney v. Yellow Cab Co.,* 2 Ill.2d 74, 117 N.E.2d 74 (1954) (unattended taxi with keys in ignition stolen by thief who negligently injured the plaintiff). The court in *Rappaport* went on to say:

"When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm not only to the minor or the intoxicated person but also to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current

> times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent." *Id.* at 8 (citations omitted).

The court also found that the intervening action of the intoxicated patron could have been a foreseeable and normal incident of the risk created by the tavern owner in serving liquor to him. *Id.* at 9. In summation, the court held that a prima facie case of tortious liability had been established, and the matter was properly for the jury's determination.

A number of other jurisdictions have followed the lead of *Waynick* and *Rappaport* in imposing civil liability upon vendors of intoxicating liquors for damages caused by their intoxicated customers. *See Vance v. United States,* 355 F. Supp. 756 (D. Alas. 1973); *Vesely v. Sager,* 5 Cal.3d 153, 95 Cal. Rptr. 623, 486 P.2d 151 (1971);[1] *Davis v. Shiappacossee,* 155 So.2d 365 (Fla. 1963); *Ono v. Applegate,* 62 Ha. 131, 612 P.2d 533 (1980); *Alegria v. Payonk,* 101 Idaho 617, 619 P.2d 135 (1980); *Colligan v. Cousar,* 38 Ill. App. 2d 392, 187 N.E.2d 292 (1963); *Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847 (1966); *Lewis v. State,* 256 N.W.2d 181 (Iowa 1977); *Pike v. George,* 434 S.W.2d 626 (Ky. 1968); *Adamian v. Three Sons, Inc.,* 353 Mass. 498, 233 N.E.2d 18 (1968); *Trail v. Christian,* 298 Minn. 101, 213 N.W.2d 618 (1973); *Munford, Inc. v. Peterson,* 368 So.2d 213 (Miss. 1979); *Sampson v. W. F. Enterprises, Inc.,* 611 S.W.2d 333 (Mo. App. 1980); *Deeds v. United States,* 306 F. Supp. 348 (D. Mont. 1969); *Berkeley v. Park,* 47 Misc. 2d 381, 262 N.Y.S.2d 290 (1965); *Mason v. Roberts,* 33 Ohio St. 2d 29, 294 N.E.2d 884 (1973); *Campbell v. Carpenter,* 279 Or. 237, 566 P.2d 893 (1977); *Jardine v. Upper Darby Lodge No. 1973, Inc.,* 413 Pa. 626, 198 A.2d 550 (1964); *Mitchell v. Ketner,* 54 Tenn. App. 656, 393 S.W.2d 755 (1964); *Callan v. O'Neil,* 20 Wash. App. 32, 578 P.2d 890 (1978); *Marusa v. D. C.,* 484 F.2d 828 (D.C. Cir. 1973). *See also* Annot., 98 A.L.R.3d 1230 (1980); 97 A.L.R.3d 528

---

1. The holding in *Vesely* has been changed by legislation. California no longer recognizes a cause of action against sellers of alcoholic beverages for the tortious acts of their patrons.

(1980). Applying common law principles of duty, foreseeability and proximate causation, these cases recognize a civil right of action against a seller of alcoholic beverages where the patron's intoxication is shown to have been either apparent, visible, obvious, or actual and was so known to the tavern owner or his employees, or should have been known had due care been exercised. Some of these cases conclude that criminal statutes in force in their jurisdictions which proscribe sales of intoxicants to minors or inebriated persons establish a standard of conduct for tavern owners and their employees from which to deviate may constitute actionable negligence.[2] Several jurisdictions have required that the tavern owner's negligence, to be actionable, must be wanton and reckless. *Kowal v. Hofher,* 181 Conn. 355, 436 A.2d 1, 42 CLJ 17 (1980); *Grasser v. Fleming,* 74 Mich. App. 338, 253 N.W.2d 757 (1977).

## IV

Maryland Code (1957, 1979 Repl. Vol.), Art. 2B, § 118 (a), makes it a misdemeanor, punishable by fine, imprisonment or both, for a licensed vendor of intoxicants or his employees to sell alcoholic beverages to minors (with certain exceptions) or to any person "visibly under the influence of any alcoholic beverage."[3] As previously indicated, a number of states have Dram Shop Acts authorizing civil damage actions against tavern owners for the tortious acts of their intoxicated patrons.[4] No such statute exists in Maryland. A

---

**2.** The authorities generally recognize that the standard of conduct of a reasonable man may be determined by a legislative enactment, even though penal in character. *See, e.g.,* W. Prosser, *Torts* § 36 at 190 (4th ed. 1971); Restatement (Second) of Torts § 285 (1966).

**3.** Every state has a criminal statute proscribing the sale of intoxicants to minors or intoxicated persons.

**4.** *See generally* Ala. Code tit. 6 § 6-5-71 (1977); Colo. Rev. Stat. § 13-21-103 (1974); Conn. Gen. Stat. Ann. § 30-102 (West 1975); Ga. Code Ann. § 105-1205 (1968); Ill. Rev. Stat. ch. 43 § 135 (Smith-Hurd Supp. 1981); Iowa Code Ann. § 123.92 (West Supp. 1979-80); Mich. Comp. Laws Ann. § 436.22 (1978); Minn. Stat. Ann. § 340.95 (West Supp. 1981); N.Y. Gen. Oblig. Law § 11-101 (McKinney 1978); N.D. Cent. Code § 5-01-06 (1975); Ohio Rev. Code Ann. § 4399.01 (Page 1973); R.I. Gen. Laws

number of states which, like Maryland, have criminal stat-
utes proscribing sales of intoxicants to minors or persons
visibly under the influence of liquor, but no Dram Shop Acts,
have continued to adhere to the non-liability rule of
*Hatfield. See Lewis v. Wolf,* 122 Ariz. 567, 596 P.2d 705
(1979); *Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656 (1965);
*Wright v. Rose Moffitt, t/a Fairways Inn,* 437 A.2d 554 (Del.
1981), *Holmes v. Circo,* 196 Neb. 496, 244 N.E.2d 65
(1976); *Hamm v. Carson City Nugget, Inc.,* 85 Nev. 99, 450
P.2d 358 (1969); *Marchiondo v. Roper,* 90 N.M. 367, 563 P.2d
1160 (1977); *Griffin v. Sebek,* 90 S.D. 692, 245 N.W.2d 481
(1976).[5] These jurisdictions have considered, but declined to
follow the new trend of cases initiated by *Waynick* and
*Rappaport,* variously expressing concern over inability to
develop a workable test for imposing liability, fear of
collusive suits and of subjecting social hosts to liability, and
the policy of stare decisis based on their prior adoption of the
*Hatfield* rule.

Of course, the common law is not static. Its life and heart
is its dynamism — its ability to keep pace with the world
while constantly searching for just and fair solutions to
pressing societal problems like that presented by the
senseless carnage occurring on our highways, due in no
small measure to the drinking driver. The common law is,
therefore, subject to modification by judicial decision in light
of changing conditions or increased knowledge where this
Court finds that it is a vestige of the past, no longer suitable
to the circumstances of our people. *Adler v. American Stan-
dard Corp.,* 291 Md. 31, 432 A.2d 464 (1981); *Condore v.
Prince George's Co.,* 289 Md. 516, 425 A.2d 1011 (1981).
Indeed, we have not hesitated to adopt a new cause of action

---

§§ 3-11-1, 3-11-2 (1956); Utah Code Ann. § 32-11-1 (1981); Vt. Stat. Ann.
tit. 7 § 501 (1972); Wis. Stat. Ann. § 176.35 (West. Supp. 1980); Wyo. Stat.
§ 12-34 (1959).

5. Several jurisdictions with Dram Shop Acts have also refused to allow
a common law cause of action. *See* Keaton v. Kroger, 143 Ga. App. 23, 237
S.E.2d 443 (1977); Miller v. Moran, 96 Ill. App. 3d 596, 421 N.E.2d 1046
(1981); Garcia v. Hargrove, 46 Wis.2d 724, 176 N.W.2d 566 (1970); Parsons
v. Jow, 480 P.2d 396 (Wyo. 1971).

by judicial decision where we have concluded that course was compelled by changing circumstances. *See, e.g., Adler, supra* (recognizing tort of abusive or wrongful discharge); *Harris v. Jones,* 281 Md. 560, 380 A.2d 611 (1977) (recognizing tort of intentional infliction of emotional distress); *Deems v. Western Maryland Ry.,* 247 Md. 95, 231 A.2d 514 (1967) (changing common law rule to make actions for loss of consortium available only jointly to husbands and wives as a legal entity). Although of great importance, we have not construed the doctrine of stare decisis to prevent us from changing a rule of law if we are convinced that the rule has become unsound in the circumstances of modern life. *Williams v. State,* 292 Md. 201, 438 A.2d 1301 (1981); *White v. King,* 244 Md. 348, 223 A.2d 763 (1966).

Although empowered to change common law rules in light of changed conditions, the Court has always recognized that declaration of public policy is normally the function of the legislative branch of government. *Adler, supra,* 291 Md. at 45. The Court has therefore declined to alter a common law rule in the face of indications that to do so would be contrary to the public policy of the State, as declared by the General Assembly of Maryland. *See Condore, supra,* 289 Md. at 532. Whether Maryland should abandon the rule in *Hatfield* and align itself with the new trend of cases which impose civil liability upon vendors of alcoholic beverages for the torts of their inebriated patrons depends ultimately upon which line of authorities, all things considered, best serves the societal interest and need. That determination clearly impacts on the development of the law relating to the dispensing and consumption of alcoholic beverages, a subject long pervasively regulated by the legislature. In 1951 when *Hatfield* was decided, there were no cases espousing a contrary view of the common law. At that time the public policy of the State, declared by the legislature in what is now § 118 (a) of Article 2B, imposed only criminal sanctions upon a licensed vendor of alcoholic beverages who sold or furnished intoxicants to minors or persons visibly under the influence of alcohol. The absence of any statute in Maryland

creating a civil cause of action in such circumstances prompted the Court in *Hatfield* to conclude that the legislature did not intend to impose civil liability upon alcoholic beverage vendors for the tortious acts of their intoxicated customers. This state of the statutory law of Maryland has remained unchanged since *Hatfield* was decided thirty years ago. *See Walker v. Hall,* 34 Md. App. 571, 369 A.2d 105 (1977).

In determining the public policy of the State, courts consider, as a primary source, statutory or constitutional provisions. Therefore, since the legislature has not yet created dram shop liability by statute, we decline, for now, to join the new trend of cases initiated by *Waynick* and *Rappaport.* Nevertheless, the legislature may wish to consider reexaming the *Hatfield* rule to determine if the public policy of the State continues to favor a rule which, in any and all circumstances, precludes consideration of whether the sale of intoxicating liquor to an inebriated tavern patron may be a proximate cause of subsequent injury caused to others by the intoxicated customer. We, therefore, find no error in the judgment of the lower court sustaining the demurrer, without leave to amend.

*Judgment affirmed, with costs.*

*Davidson, J., dissenting:*

The majority here states:

"Of course, the common law is not static. Its life and heart is its dynamism — its ability to keep pace with the world while constantly searching for just and fair solutions to pressing societal problems like that presented by the senseless carnage occurring on our highways, due in no small measure to the drinking driver. The common law is, therefore, subject to modification by judicial decision in light of changing conditions or increased knowledge where

this Court finds that it is a vestige of the past, no longer suitable to the circumstances of our people.

. . .

"Although empowered to change common law rules in light of changed conditions, the Court has always recognized that declaration of public policy is normally the function of the legislative branch of government. The Court has therefore declined to alter a common law rule in the face of indications that to do so would be *contrary to the public policy of the State, as declared by the General Assembly of Maryland. . . .* The absence of any statute in Maryland creating a civil cause of action in such circumstances prompted the Court in *Hatfield* to conclude that the legislature did not intend to impose civil liability upon alcoholic beverage vendors for the tortious acts of their intoxicated customers. This state of the statutory law of Maryland has remained unchanged since *Hatfield* was decided thirty years ago.

. . .

"Therefore, since the legislature has not yet created dram shop liability by statute, we decline, for now, to join the new trend of cases initiated by *Waynick* and *Rappaport*." (Citations omitted) (emphasis added).

Manifestly, the majority has concluded that legislative inaction establishes and constitutes an affirmative legislative declaration of public policy that precludes this Court from altering an outmoded common law rule. Yet this Court has repeatedly and consistently recognized that nonaction by the Legislature, after an adverse court decision, "affords the most dubious foundation for drawing positive inferences." *See, e.g., Automobile Trade Ass'n of Maryland, Inc. v. Insurance Comm'r of Maryland,* 292 Md. 15, 24, 437 A.2d 199, 203 (1981); *Police Comm'r of Baltimore City v. Dowling,* 281 Md. 412, 420-21, 379 A.2d 1007, 1012 (1977); *Harden v. Mass Transit Admin.,* 277 Md. 399, 406, 354 A.2d 817, 821

(1976); *Hearst Corp. v. State Dept. of Assessments & Taxation,* 269 Md. 625, 645, 308 A.2d 679, 689 (1973). In the absence of any statute either authorizing or prohibiting civil damage actions against licensed vendors of intoxicating liquors for the tortious acts of minor or intoxicated patrons to whom they sell alcoholic beverages, I am unable to conclude, as does the majority, that the Legislature has declared that it is the public policy of this State to prohibit such actions. Under these circumstances, I do not feel constrained to join with my colleagues in their effort to once again perpetuate the past. Accordingly, I respectfully dissent.

In my view, it is common knowledge that the problems associated with drunk driving have presently reached massive proportions. Just and fair solutions additional to those presently existing are required if societal interests are to be protected and preserved. As the majority itself notes, in the 30 years since *Hatfield,* courts in a majority of other jurisdictions that have considered the problem "have departed from the early common law rule and have imposed civil liability, independent of statute, upon sellers of alcoholic beverages for damages caused by their intoxicated patrons." In light of changing conditions, I, like these other courts, am convinced that the common law rule has become unsound in the circumstances of modern life. I would hold that a cause of action exists against licensed vendors of intoxicating liquors for the tortious acts of minor or intoxicated patrons to whom they sell alcoholic beverages in violation of Maryland Code (1957, 1981 Repl. Vol.), Art. 2B, § 118 (a). Accordingly, I would reverse and remand.