## HOWARD S. WILLIAMSON

### V.

## THE OLD BROGUE, INC.

Record No. 850806

November 26, 1986

Present: All the justices

*Barry D. Murphy* for appellant.
*Benjamin J. Trichilo (Julia B. Judkins; Lewis, Tydings, Bryan & Trichilo, P.C.*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this tort action, we consider whether a retail seller of alcoholic beverages may be liable in damages for providing alcoholic drinks to a customer who, while intoxicated, injures a third person in a motor vehicle accident.

In 1984, appellant Howard S. Williamson brought this action against Ethel C. Loredo and appellee The Old Brogue, Inc., seeking compensatory and punitive damages as the result of a motor vehicle collision in Fairfax County between automobiles operated by the plaintiff and Loredo respectively. Subsequently, the plaintiff settled his claim against Loredo, executing a covenant not to sue in favor of Loredo and her insurer. Thereafter, the trial court sustained a demurrer filed by defendant The Old Brogue, and we awarded the plaintiff this appeal from the July 1985 order dismissing the action.

In his motion for judgment, the plaintiff alleged that Loredo had been a customer in defendant's place of business, "an Irish Pub," for approximately four hours during the period immediately prior to the accident in question. He further alleged that while on defendant's premises Loredo "consumed prodigious quantities of alcohol" served to her by defendant's employees. The plaintiff also alleged that, as the result of the consumption of alcoholic bever-

ages on defendant's premises, Loredo became intoxicated and that such fact was known to defendant's employees.

The plaintiff further alleged that, due to Loredo's negligent and willful conduct while intoxicated, her vehicle crossed the center line of a highway and collided head-on with the plaintiff's vehicle, causing him severe personal injuries. The plaintiff also alleged that The Old Brogue was guilty of negligent and willful conduct which was a proximate cause of his damages, because defendant's employees served Loredo alcoholic drinks while she was intoxicated with actual or constructive knowledge she would leave defendant's premises and operate a vehicle on the roads of the Commonwealth while so inebriated.

The trial court sustained the demurrer upon the ground that the common law of Virginia does not impose civil liability upon a tavern owner under these circumstances. The court held that because the common-law rule has not been abrogated by legislative action, the courts should not create liability by judicial decree.

On appeal, the plaintiff argues that the trial court erred in sustaining the demurrer. The plaintiff notes that the General Assembly of Virginia has not enacted so-called "dram shop legislation," which imposes civil liability on the seller of intoxicants when a third party is injured as the result of the buyer's intoxication where the sale has caused the intoxication. Nevertheless, the plaintiff argues, " 'dram shop liability' is grounded in the common law of Virginia . . . and legislative fiat is not necessary to apply longstanding negligence principles to facts such as those in the case at bar."

In addition, the plaintiff observes that under Virginia statutory law a seller of intoxicants who dispenses alcoholic beverages to an intoxicated person is guilty of a misdemeanor. The plaintiff maintains that violation of such statute is negligence *per se*, giving rise to a cause of action on behalf of damaged third parties. Thus, plaintiff contends, the only question remaining is whether such negligence is a proximate cause of damage to the third party or "is a reasonably foreseeable consequence of a sale of alcoholic beverages in violation of a statute." The plaintiff asserts that such question is a matter of fact to be determined by a jury and should not be decided as a matter of law on demurrer. We disagree.

■ We have not previously addressed the issue presented. At common law, however, "an innocent third party did not have a cause of action against a vendor of alcoholic beverages for injuries

suffered as a result of the intoxication of the vendor's patron." *Felder* v. *Butler*, 292 Md. 174, 176, 438 A.2d 494, 495 (1981). The basis of the rule is that individuals, drunk or sober, are responsible for their own torts and that, apart from statute, drinking the intoxicant, not furnishing it, is the proximate cause of the injury. *Id.* at 177, 438 A.2d at 496, *quoting State* v. *Hatfield*, 197 Md. 249, 78 A.2d 754 (1951); Annot., 97 A.L.R. 3d 528, 533. In other words, the common law considers the act of selling the intoxicating beverage as too remote to be a proximate cause of an injury resulting from the negligent conduct of the purchaser of the drink. *Felder*, 292 Md. at 177, 438 A.2d at 496. Thus, the plaintiff is incorrect in asserting that dram shop liability "is grounded in the common law of Virginia." On the contrary, *nonliability* of one furnishing intoxicants under these circumstances is a part of the common law of Virginia.

 The reason for this is that the courts in Virginia operate under a statutory mandate which provides that the common law of England, if not repugnant to the principles of the Bill of Rights or the Virginia Constitution, continues in full force and effect within the State, and shall "be the rule of decision, except as altered by the General Assembly." Code § 1-10. But this does not mean that common-law rules are forever chiseled in stone, never changing. The common law is dynamic, evolves to meet developing societal problems, and is adaptable to society's requirements at the time of its application by the Court. *Surratt* v. *Thompson*, 212 Va. 191, 193, 183 S.E.2d 200, 202 (1971); *Midkiff* v. *Midkiff*, 201 Va. 829, 832, 113 S.E.2d 875, 877 (1960).

We have not overlooked the fact that, while many courts adhere to the common law on the subject, a large number of jurisdictions have abrogated by judicial decree the common-law rule of nonliability in the absence of dram shop legislation. For a collection of these cases, see Annot., 97 A.L.R. 3d 528. In fact, one federal district court sitting in Virginia recently refused to follow the common-law rule; more recently another applied it. *Compare Corrigan* v. *United States*, 595 F. Supp. 1047 (E.D. Va. 1984), *with Webb* v. *Regua Limited Partnership*, 624 F. Supp. 471 (E. D. Va. 1985). Nor are we insensitive to the social problem illustrated by this case, that is, the highway carnage caused by drunk drivers. *See Lowe* v. *Commonwealth*, 230 Va. 346, 350 n.2, 337 S.E.2d 273, 276 n.2 (1985), *cert. denied*, 475 U.S. 1084 (1986).

■ Nevertheless, we will apply the law as it now exists, because we believe that a decision whether to abrogate such a fundamental rule as the one under consideration is the function of the legislative, not judicial, branch of government. Where, as here, the issue involves many competing economic, societal, and policy considerations, legislative procedures and safeguards are particularly appropriate to the task of fashioning an appropriate change, if any, to the settled rule.

"A legislative change in the law is initiated by introduction of a bill which serves as public notice to all concerned. The legislature serves as a forum for witnesses representing interests directly affected by the decision. The issue is tried and tested in the crucible of public debate. The decision reached by the chosen representatives of the people reflects the will of the body politic. And when the decision is likely to disrupt the historic balance of competing values, its effective date can be postponed to give the public time to make necessary adjustments." *Bruce Farms* v. *Coupe*, 219 Va. 287, 293, 247 S.E.2d 400, 404 (1978).

There are numerous issues to be confronted relating to any effort to annul the common-law rule under discussion. For example, should tavern owners alone be subjected to liability or should social hosts be liable, too? If social hosts are liable, will minors be accountable as well? Should the intoxicated purchaser have a cause of action against the tavern owner or the social host? And, should any new rule be retrospective or prospective only in its application? A court is ill-suited to furnish comprehensive answers to all these questions in one judicial opinion, and we will not embark on such an exercise in this case.

■ Finally, we address plaintiff's alternative argument that defendant's statutory violation makes it guilty of actionable negligence, thereby raising a question of fact on proximate cause or foreseeability. Code § 4-62(1)(c), a part of the Alcoholic Beverage Control Act (the Act), Code §§ 4-1 to -118.41, provides that a person who sells any alcoholic beverages to an intoxicated person shall be guilty of a misdemeanor. While the defendant allegedly violated this statute, that does not mean the statute creates a cause of action in favor of the plaintiff imposing civil liability on defendant, assuming it is a seller of intoxicants licensed under the

Act. Indeed, we recently have decided, when addressing another provision of the Act, that "[t]he Act mandates no statutory tort liability." *Harbour Enterprises, Inc.* v. *Ferro*, 231 Va. 71, 74, 340 S.E.2d 818, 820 (1986).

■ Moreover, the violation of a statute does not, by that very fact alone, constitute actionable negligence or make the guilty party negligent *per se.* "In order for the violation of a statute or ordinance to constitute actionable negligence, the injured person must have been of that class for whose benefit or protection the law was enacted . . . ." *Smith* v. *Transit Co.*, 206 Va. 951, 957, 147 S.E.2d 110, 114-15 (1966). In other words, a statute may define the standard of care to be exercised where there is an underlying common-law duty, but the doctrine of negligence *per se* does not create a cause of action where none otherwise exists. *Butler* v. *Frieden*, 208 Va. 352, 353, 158 S.E.2d 121, 123 (1967). So the crucial question in this phase of the case is whether a person injured by an intoxicated customer of a vendor of intoxicants is a member of the class for whose benefit Code § 4-62(1)(c) was enacted. We answer that query in the negative.

The title to the Act, first passed in 1934, recites that its purpose is

"to legalize, regulate and control the manufacture, bottling, sale, distribution, transportation, handling, advertising, possession, dispensing, drinking and use of alcohol . . . and all liquids, beverages and articles containing alcohol obtained by distillation, fermentation or otherwise; to create a Department of Alcoholic Beverage Control . . . ; to provide for licensing and taxing manufacturers, bottlers, wholesalers and retailers of alcohol . . . ; to impose excise taxes on such liquids, beverages and articles; to appropriate money for the administration of the act . . . ; [and] to impose penalties for violations of the act; . . . ." Acts 1933-34, ch. 94 at p. 100; *see Miller* v. *Commonwealth*, 172 Va. 639, 646, 2 S.E.2d 343, 346 (1939).

■ Manifestly, this legislation, passed in the wake of the repeal of Prohibition, was a licensing act directed to promotion of sobriety and public morality. Although enacted pursuant to the police power of the State, "in the interest of the safety, health, and well-being of the local communities," *Dickerson* v. *Commonwealth*,

181 Va. 313, 321, 24 S.E.2d 550, 554 (1943), the legislation was not a public safety measure. The danger confronted by the enactment was the unrestrained sale of intoxicants with the resulting threat to public sensibilities. While improved public safety and prevention of personal injury were incidental benefits flowing from the Act, public sobriety and individual moderation were its plain goals. *See Norwood* v. *Marrocco*, 780 F.2d 110 (D.C. Cir. 1986). *See also Holmes* v. *Circo*, 196 Neb. 496, 244 N.W.2d 65 (1976). Therefore, because the Act was not public safety legislation, it necessarily follows that a person injured by an intoxicated customer of a seller of intoxicants is not a member of the class for whose benefit the statutory provision in question was enacted. Thus, violation of the statute does not constitute negligence *per se* and does not furnish the basis for a civil action in damages. *See Johnson* v. *J. S. Bell & Co.*, 202 Va. 274, 117 S.E.2d 85 (1960) (ordinance imposing duty on abutting property owners to remove snow from sidewalk within a specified time enacted for benefit of city and not a pedestrian who fell on ice and snow); *Oliver* v. *Cashin*, 192 Va. 540, 65 S.E.2d 571 (1951) (housing standard ordinance did not enlarge common-law duty of landlord in suit by person injured on defective steps at entrance to leased premises).

In conclusion, the plaintiff relies upon *Crowell* v. *Duncan*, 145 Va. 489, 134 S.E. 576 (1926), and argues the decision is "applicable to the instant case." *Crowell* is inapposite.

■ There, a plaintiff sued a father for personal injuries sustained due to the negligence of defendant's adult son who, while intoxicated, drove the father's automobile into the plaintiff. The case was tried on theories of respondeat superior and negligent entrustment. This Court affirmed a judgment in favor of the plaintiff on both theories. But that case, unlike the present case, did not require abrogation of settled common-law rules. The concepts of master-servant liability and the liability of an owner for knowingly allowing an intoxicated person to drive his vehicle were principles based on the common law. Thus, the *Crowell* precedent is not controlling here.

For these reasons, the order of the trial court sustaining the demurrer and dismissing this action will be

*Affirmed.*