William Frank STARR, As Personal
Representative of the Estate of
George W. Starr, Plaintiff,

v.

UNITED STATES of America, Defendant.

Action No. 2:95cv1210.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 3, 1996.

Michael A. Kernbach, Jack T. Burgess and
Associates, Fairfax, VA, for Plaintiff.

Michael A. Rhine, Assistant United States
Attorney, Norfolk, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District
Judge.

This matter comes before the Court upon a
Motion to Dismiss pursuant to Rule 12(b)(1)
and (6) of the Federal Rules of Civil Proce-
dure, filed by the United States of America,
the defendant in this action. For the reasons
stated below, this Motion is GRANTED, and
the Court DISMISSES the action.

### I. Factual and Procedural History

Plaintiff, William F. Starr, brings this ac-
tion as the personal representative of the
estate of George W. Starr, who died follow-
ing an automobile accident caused by the
negligence and drunken driving of a 19–year
old Navy enlisted man, Sean Armao. Armao,
who had been drinking for hours at various
Navy night clubs and barracks, was appar-
ently drunk when he struck and killed
George Starr and certain other civilians.
Plaintiff brings this suit under the Federal
Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–
80, offering various theories to support his
contention that the United States is liable for
Armao's misdeeds.

In ruling on the Defendant's Motion to
Dismiss, the Court accepts as true the facts
alleged in Plaintiff's Amended Complaint.
The August 31, 1991 accident which spawned
this litigation followed an evening of drinking
and partying by Armao, several other under-
age Navy enlisted personnel, and their un-
derage female companions. The evening's
revelry commenced at around 9:00 p.m. on
August 30, 1991, at the Voyager's Enlisted
Men's Club at N.A.S. Oceana. Despite the
fact that Armao and his friends were not of
legal age, the Club never asked for identifica-
tion and served them large quantities of alco-
hol. After the Club closed at around 1:30
a.m., Armao and his friends, while drunk,
drove from the Club to Armao's barracks,
where they continued to drink and dance.
At around 3:00 a.m., Armao, who was visibly
intoxicated, drove his car past the gate secu-
rity at N.A.S. Oceana with the intent of
returning one of his companions to his duty
station aboard the U.S.S. *Eisenhower.* Na-
val security failed to stop or question Armao
regarding his drunken state. Around 4:30

a.m., Armao, still intoxicated, was returning to N.A.S. Oceana via I–44. The accident occurred because Armao failed to heed warnings that another accident (which ironically also involved an intoxicated Navy enlisted man) had blocked off his lane of travel. Armao careened through the earlier accident scene and killed, among others, George Starr, who was assisting in emergency rescue efforts of the motorist who had been injured in the earlier collision.

Plaintiff filed this action against the United States of America in the United States District Court in Columbia, South Carolina, on October 7, 1994. The case was transferred to the Eastern District of Virginia, Norfolk Division, on December 22, 1995. Plaintiff, who brings this suit under the Federal Tort Claims Act, advances several theories to support his position that the United States is liable for Armao's actions. Starr notes that the United States or its agents and assigns failed to abide by its own regulations, in that, among other things, it allowed Armao to drive off the base while obviously intoxicated, served Armao alcohol despite the fact that he was underage, and failed to recognize or treat Armao's drinking problem. Starr insists that the United States is liable because it negligently served alcohol to a minor, because a "special relationship" existed between itself and Armao, and also under the theories of *respondeat superior* and nuisance. On July 23, 1996, the United States filed its Motion to Dismiss. In its Motion, the Government contends that relevant Virginia and Fourth Circuit case law clearly provides that, based on Plaintiff's own statement of the facts, it cannot be held liable for Armao's misdeeds. Starr filed a Memorandum in Opposition to Defendant's Motion to Dismiss on August 15, 1996, and the United States replied on August 27, 1996. The matter is now ripe for decision.

## II. Standard of Review

The United States' Motion presents one argument that implicates both Rule 12(b)(1) as well as 12(b)(6). The Government attacks the Court's subject matter jurisdiction by arguing that Starr has failed to state a claim under the Federal Tort Claims Act because he has not advanced a theory of recovery sufficient to pass muster under Virginia law.

With regard to the United States' 12(b)(1) motion challenging jurisdiction, the burden is on the Plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). A motion under Rule 12(b)(1) may attack subject matter jurisdiction in two different ways. In the first, a Rule 12(b)(1) motion may attack the complaint on its face, asserting simply that the complaint "fails to allege facts upon which subject matter jurisdiction can be based."[1] *Adams*, 697 F.2d at 1219. If such is the case, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* The Government's Motion falls into this category. The United States assumes the correctness of the facts pled in Plaintiff's Complaint. The Government then notes that the claim against it was brought pursuant to the Federal Tort Claims Act, but asserts that, because Starr has failed to state a proper claim under that Act, he has thereby failed to allege facts upon which subject matter can be based.

When deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the factual allegations in the plaintiff's complaint must be accepted as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). A Rule 12(b)(6) motion should only be granted "if it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When deciding a Rule 12(b)(6) motion, a court should only consider the pleadings, dis-

---

1. In the alternative, a Rule 12(b)(1) motion may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings."

*Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977); *see also Adams,* 697 F.2d at 1219.

regarding affidavits or other materials. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### III. Statement of Applicable Law

This suit against the United States is brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), 2671–80. In general the federal government, as sovereign, is immune from suit. This immunity can only be waived by Congress, and any such waivers must be strictly construed. *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976); *Radin v. United States,* 699 F.2d 681, 685 (4th Cir.1983). The FTCA is thus only a limited waiver of sovereign immunity and makes the United States liable, to the extent of a private party, "for certain torts of federal employees acting within the scope of their employment." *Orleans,* 425 U.S. at 813, 96 S.Ct. at 1975.

The FTCA precludes imposition of liability if there has been "no negligence or other form of 'misfeasance or nonfeasance' on the part of the Government." *Laird v. Nelms,* 406 U.S. 797, 799, 92 S.Ct. 1899, 1900–01, 32 L.Ed.2d 499 (1972) (citations omitted). In order for liability to attach to the United States, a FTCA plaintiff must therefore demonstrate that the Government, through its actors, breached some duty of care. The Act itself, however, does not create any new causes of action, and the "mere allegation of a breach of duty under Federal law does not, by itself, state a valid tort claim against the Government." *Florida Auto Auction of Orlando, Inc. v. U.S.,* 74 F.3d 498, 502 (4th Cir.1996) (quoting *Goldstar (Panama) S.A. v. U.S.,* 967 F.2d 965, 969 (4th Cir.1992)). Rather, a plaintiff bears the burden of showing that the alleged breach of duty is tortious under the law of the state "where the act or omission occurred." *Id.;* 28 U.S.C. § 1346(b). Because all relevant conduct in this case occurred in Norfolk and Virginia Beach, Virginia law applies. Thus, whether a claim under the FTCA can be made out "depend[s] on whether a private individual

under like circumstances would be liable under" the law of the Old Dominion. *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1853, 10 L.Ed.2d 805 (1963).

### IV. Analysis

The Plaintiff filed this action pursuant to the Federal Tort Claims Act, and alleges that the United States is liable for damages arising from Armao's drunk driving accident. Starr recognizes that Virginia law governs this case, and insists that under Virginia law, the United States is liable as a result of the fault of its various agents who negligently served Armao alcohol and then failed to take steps to prevent him from leaving the base while intoxicated. Starr advances a plethora of grounds to support this conclusion. Plaintiff's theories, however, are totally without merit. Virginia and Fourth Circuit case law, which could hardly be more clear, obliges this Court to reject Starr's arguments and find that the United States is not liable for Armao's acts.

Most of Plaintiff's lengthy brief constitutes an attempt to evade obviously relevant Virginia and Fourth Circuit precedent. In a series of decisions, courts have refused to find 1) a retail seller of alcohol liable for providing alcohol to a customer, *Williamson v. The Old Brogue,* 232 Va. 350, 350 S.E.2d 621 (1986); 2) the United States liable for providing (through Army taverns) alcohol to an underage Army private, *Corrigan v. U.S.,* 815 F.2d 954 (4th Cir.1987); or 3) a retail seller of alcohol liable for providing alcohol to an underage patron, *Byrd v. Gate Petroleum Co.,* 845 F.2d 86 (4th Cir.1988).

In *Williamson,* the Virginia Supreme Court stated unequivocally that it will not recognize "dram shop liability" under Virginia law.[2] The Court first noted that at common law, an innocent third party does not have a cause of action against a vendor of alcohol for injuries sustained as the result of the vendor's patron's intoxication. *Williamson,* 350 S.E.2d at 623. "Nonliability of one furnishing intoxicants" is the rule in Virginia because "drinking the intoxicant, not furnish-

---

**2.** Dram shop liability "permits an action to be brought by a person injured by an intoxicated person against one who contributed to the intoxi-

cation." *Black's Law Dictionary* 583 (4th ed. 1968).

ing it, is the proximate cause of the injury." *Id.* The Court took pains to stress that selling alcohol to another is "too remote to be a proximate cause" of any injury caused by the drinker's negligence. *Id.*

While it recognized the evils of drunken driving and noted that other states' courts have taken action by permitting dram shop liability claims, the Virginia Supreme Court pointedly refused to follow suit. The Court expressed its unwillingness to alter the common law in this area by judicial fiat, believing instead that the "many competing economic, societal, and policy considerations" involved in the issue necessitate a legislative resolution to the problem. *Id.* at 624. *Williamson* also rejected the claim that the tavern owner's violation of Va.Code Ann. § 4–62(1)(c) (since repealed) (prohibiting the sale of alcohol to an intoxicated person) constitutes actionable negligence. *Id.* The Court declared that merely violating a statute does not make a party guilty of negligence *per se;* rather, the statute merely defines a standard of care for an underlying common law duty. *Id.* Because the tavern owner owed no common law duty to innocent victims of his intoxicated patron's negligence, however, the statutory violation cannot give rise to a cause of action.

In *Corrigan* and *Byrd,* the Fourth Circuit applied *Williamson* and rejected similar claims. The *Byrd* facts correspond to those in *Williamson;* the primary difference is that the patron in *Byrd* was a minor. The plaintiff in *Byrd* tried to distinguish *Williamson* by arguing that he stated a common-law claim against the store owner for negligent entrustment of a dangerous instrumentality to a minor. The court in *Byrd* rejected this argument because the plaintiff could not demonstrate causation, a prerequisite for any negligence claim; under *Williamson,* the owner's serving of the drink is not a proximate cause of the patron's actions. *Byrd,* 845 F.2d at 88. The *Byrd* court likewise declined to accept the contention that the store owner's violation of Va.Code Ann.

§ 18.2–371 (1950 & 1982 Repl.Vol.) (contributing to the delinquency of a minor) constituted actionable negligence. *Id.* at 89.

*Corrigan v. U.S.* is almost perfectly analogous to the instant case. In *Corrigan,* the Fourth Circuit held that the United States was not liable pursuant to the FTCA for injuries to a passenger in a vehicle struck by an intoxicated 19–year old soldier who had been served alcoholic beverages at a noncommissioned officers club. The court found that *Williamson's* rejection of dram shop liability disposed of plaintiff's claims. *Corrigan,* 815 F.2d at 956–57. The court refused to accept the argument that the Army club's violation of Army regulations barring the sale of alcohol to minors constituted actionable negligence. The Fourth Circuit reasoned that this argument was really no different from the idea, rejected in *Williamson,* that violation of various sections of the Virginia Code thereby created a cause of action against sellers of alcohol. *Id.* at 957.

Finally, the plaintiff in *Corrigan* contended that a special relationship, or "quasi-parental relationship," existed, which placed a special obligation on the Army to deal with the enlisted man's alcoholism, and that the breach of this duty gave rise to liability. The court declined to accept this theory. Noting the "positiveness" of *Williamson's* rejection of dram shop liability, the Fourth Circuit feared that permitting an exception to the rule of "non-liability" based on a showing of a "special relationship" would impermissibly weaken the rule as stated by the Virginia Supreme Court. *See id.* at 957–58 (citing *Bell v. Hudgins,* 232 Va. 491, 352 S.E.2d 332 (1987), for the proposition that the mere existence of some special relationship will not give rise to an actionable claim in the absence of *respondeat superior* liability).

Starr employs various arguments in his attempt to avoid the seemingly clear impact of *Williamson, Corrigan,* and *Byrd.* Several of these contentions, however, are fairly frivolous and do not merit much discussion.[3]

---

**3.** Starr first attempts to construe *Williamson* extremely narrowly, arguing that it only addresses the issue of liability for the sale of alcohol to an adult, and hence leaves open the possibility that liability could attach from the sale of alcohol to a minor. Even if Starr's interpretation of *Williamson* were correct, however, it fails to take into account or distinguish *Byrd* and *Corrigan,* both of which involve the sale of alcohol to one who was not of legal age.

One of Starr's contentions, however, does warrant somewhat more attention. Starr insists that in *Sheridan v. U.S.*, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), the Supreme Court implicitly overruled *Corrigan* by holding that a "special relationship" does exist between the United States and an enlisted man, and that this relationship could serve as the basis for liability. *Sheridan*, says Starr, held that the United States was liable under the FTCA for the negligence of certain Army corpsmen in allowing a drunk, off-duty service member to leave the Bethesda Naval Hospital grounds with a loaded rifle, which the man later used to shoot at passing cars. Starr relies on his interpretation of *Sheridan* to urge this Court to decline to follow *Corrigan*.

Starr's interpretation of *Sheridan* is, at the very least, highly misleading. Plaintiff's assertion to the contrary, *Sheridan* nowhere concludes that a cause of action existed because of a "special relationship" between the United States and its military personnel. In fact, the Court in *Sheridan* never found the United States liable under the FTCA. All the Supreme Court said was that the negligence of the Army corpsmen could potentially serve as a basis of liability under the FTCA, but only if similar negligent conduct would support recovery under state law, which in *Sheridan* was the law of Maryland. The two lower courts had simply assumed that the plaintiff's facts would support a recovery under Maryland law, so that they could address the legal FTCA issues. Far from finding the United States liable under the FTCA, the Supreme Court remanded to determine whether such a claim really was viable under state law. The district court then granted the United States' Motion for Summary Judgment, finding that the Government could not be held liable under Maryland law for negligently failing to enforce the regulations at issue; nor, the court found, did the Government's negligence proximately cause plaintiff's injuries under state law. *See Sheridan v. U.S.*, 773 F.Supp. 786 (D.Md. 1991), *aff'd* 969 F.2d 72 (4th Cir.1992).

Thus, Starr's attempt to distinguish or limit *Corrigan* fails. *Corrigan* is still good law, and almost exactly on point, as are *Byrd* and *Williamson*. Based on these cases, Starr has failed to show that the United States should be held liable under Virginia law for the injuries he received as a result of Armao's negligence. For that reason, this Court GRANTS the Government's Motion to Dismiss and DISMISSES the action.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is so **ORDERED**.

---

Starr also urges the Court to follow the lead taken by the Ninth Circuit in *Doggett v. United States*, 875 F.2d 684 (9th Cir.1989). Unfortunately for Starr, *Doggett* simply holds that, under California law, a plaintiff in his position might be able to recover. It bears absolutely no relevance to the question before this Court; namely, whether, under Virginia law, Starr has successfully stated a cause of action.

Finally, Starr advances the theories of *respondeat superior* and nuisance to support his claim. To support his *respondeat superior* theory, the Plaintiff directs the Court's attention to *Taber v. Maine*, 45 F.3d 598 (2nd Cir.1995), and a few Virginia worker's compensation cases, none of which are applicable to these facts. *Taber* is of no value in resolving the instant question. That case merely found that a drunken sailor was acting within the "scope of his employment" as that term is apparently used under California law. As with *Doggett*, however, *Taber* construes California law and has no bearing on this case, governed as it is by the law of Virginia. Starr's nuisance theory argument fares no better. A claim for nuisance necessitates a showing of proximate cause, and *Williamson* clearly states that only consuming the drink, and not serving the drink, constitutes the proximate cause of subsequent injuries arising out of the patron's intoxication.