## CIRCUIT COURT OF FAIRFAX COUNTY

Seymour L. Moskowitz

    v.

Renaissance at
Windsong Creek, Inc., et al.

Case No. (Law) 183598

Jeffrey D. Sanok

    v.

Renaissance at
Windsong Creek, Inc., et al.

Case Nos. (Law) 184143

July 19, 2000

BY JUDGE ROBERT W. WOOLDRIDGE, JR.

This matter came before me on June 23, 2000, on defendant M & J Classics, Inc.'s Demurrer to the Amended Motions for Judgment in the above-referenced cases. Because I find that the plaintiffs cannot maintain a claim of negligence *per se* against this defendant as a matter of law, I sustain the demurrer without leave to amend.

In order to maintain a claim of negligence *per se*, a plaintiff must allege: (1) that the defendant violated a statute that was enacted for public safety, see *VEPCO v. Savoy Const. Co.*, 224 Va. 36, 45 (1982); (2) that plaintiff belongs to the class of persons for whose benefit the statute was enacted, and that the harm that occurred was of the type against which the statute was designed to protect, *see Pearson v. Canada Contracting Co.*, 232 Va. 177 (1986); and (3)

that the statutory violation was a proximate cause of his injury. *See Thomas v. Settle*, 247 Va. 15, 20 (1994).

In *Williamson v. The Old Brogue, Inc.*, 232 Va. 350 (1986), the court held that a criminal statute making the sale of alcohol to an intoxicated person illegal could not serve as the basis of a negligence *per se* claim against the seller of the alcohol by a third party whom the intoxicated person injured. The court reasoned that because the criminal statute was not passed as a public safety measure, the injured third party was not a member of the class for whose benefit the statute was enacted. Because the alcohol seller owed no duty at common law to a third party injured by the alcohol purchaser, violation of the statute did not constitute negligence *per se. See id.* at 354-55.

Unlike the criminal statute discussed in *Williamson*, the Uniform Statewide Building Code (USBC) was enacted "to protect the health, safety, and welfare of the residents of the Commonwealth . . . ." 1950 Va. Code § 36-99(A). No provision of the statute indicates that its purpose was to protect the economic interests of homeowners. Plaintiffs are not seeking damages for personal injury, but rather for injury to their homes caused by the allegedly defective Exterior Insulation and Finish System (EIFS). Where a plaintiff alleges that one component of a dwelling damages the rest of the structure, only economic loss is realized. *See Sensenbrenner v. Rust*, 236 Va. 419, 422-423 (1988). Because a subcontractor has no common law duty to protect a homebuyer from purely economic loss, the USBC cannot serve as a basis for a negligence *per se* claim. "[A] statute may define the standard of care to be exercised *where there is an underlying common law duty*, but the doctrine of negligence *per se* does not create a cause of action where none otherwise exists." *Williamson* at 355 (emphasis added). Because the harm that allegedly occurred in this case was not the type against which the USBC was designed to protect, the second requirement of a negligence *per se* claim cannot be met.

At the hearing on this matter, plaintiff cited *MacCoy v. Colony House Builders, Inc.*, 239 Va. 64 (1990), for the proposition that violation of the USBC is negligence *per se*. In *MacCoy*, the plaintiff homeowner sued the home builder and the electrician who performed electrical work on the home to recover for property damage caused by an electrical fire. The issue before the court was the builder's liability for the electrician's negligence under *respondeat superior* and the USBC's "wrongfulness *per se*" exception. The court did not reach the specific issue of whether the electrician, as a subcontractor, was liable for negligence *per se*. The court's statement that "violation of the Building Code . . . is negligence *per se*," is dicta and therefore not persuasive.