**H. Marshall JARRETT and Marian H. Jarrett, Appellants,**

v.

**WOODWARD BROS., INC., Appellee.**

**No. 96–CV–1715.**

District of Columbia Court of Appeals.

Argued March 18, 1998.
Decided May 25, 2000.

Patrick M. Regan, with whom Jonathan E. Halperin, Washington, DC, was on the brief, for appellants.

Richard T. Tomar, Washington, DC, with whom Sharon M. Goley, was on the brief, for appellee.

Before RUIZ and REID, Associate Judges, and KERN, Senior Judge.

RUIZ, Associate Judge:

This case presents an issue of first impression: whether an intoxicated underage patron who sustains injury as a result of his intoxication can sue the restaurant-bar that served him liquor for common law negligence or negligence *per se* in violation of the standard set forth in D.C.Code § 25–121 (1996), which prohibits the sale of alcohol to, and the consumption of alcohol by, underage and intoxicated persons. We reverse the order granting summary judgment for the restaurant-bar because we conclude 1) that our opinion in *Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268 (D.C.1987), *appeal after remand and reversed and remanded on other grounds by*, 699 A.2d 348 (D.C. 1997), and the principles we developed there, require us to extend liability in the case of an underage, intoxicated patron injured as a result of the tavern keeper's negligence; and 2) that assumption of risk

is inapplicable in this context because an underage, intoxicated person is deemed incapable, as a matter of law, of relieving the tavern keeper of the duty which the statute imposes.

## I.

### A. The Facts.

Construed in the light most favorable to the Jarretts, who opposed summary judgment, the record before us shows the following basic facts.[1] On September 16, 1993, Adam Jarrett, then a nineteen-year-old George Washington University ("GW") student, went to Winston's, a popular restaurant-bar owned by appellee, located at 3295 M Street, N.W. Earlier that night, at around 7:00 p.m., Adam and his friends had dinner at Friday's, a restaurant located in the vicinity of GW, where they attempted to buy alcohol, but Adam's fake identification was rejected. Before returning home, Adam and his roommate, Eric Kaufman, stopped at a friend's house shortly after 8:00 p.m., where Adam consumed anywhere from four to six cups of beer from a keg. From there, Adam continued to Winston's with a group of friends. It is not clear from the record whether Adam was allowed into Winston's with knowledge that he was an underage patron[2] or whether he used a fake identification card to gain admission.[3]

At around ten o'clock that evening, when he caught up with Adam at Winston's,

Kaufman observed that Adam had consumed at least three shots of alcohol and four or five bottles of beer in a period of less than one hour. Craig Fields, also a friend of Adam's, noticed that Adam was intoxicated when he arrived at Winston's and saw him consume two shots and a beer in a ten-to-fifteen minute period. According to Fields, when he arrived at Winston's Adam was "ridiculous[ly] drunk," "had slurred speech. His eyes were half shut. He was laughing and wobbling all around." Kaufman testified in his deposition that Adam was visibly drunk at the time he received "shots" from Winston's. Specifically, "his eyes were like swimming. He was kind of like slurring. He was definitely slurring his words."

Adam Jarrett left Winston's, alone, sometime after eleven o'clock in the evening. At approximately 11:47, he was struck by a car while he was walking in the southbound lanes of Rock Creek Parkway just south of the M Street overpass. Adam was rendered unconscious by the impact, was unresponsive at the scene of the accident, and died the following day. The toxicology report reflected that Adam's blood alcohol level at or near the time of the accident was 298 mg/dL for ethanol which is equivalent to the more familiar measure of .298 percent alcohol by weight.[4] The National Park Service Report stated that Adam was very intoxicated at the time of the accident and that his

---

1. Appellants also make a number of allegations in their brief to the effect that Winston's has engaged in a practice of luring underage drinkers from area colleges and has a history of liquor law violations, as well as other alleged improprieties by the Alcoholic Beverage Control Board in connection with Winston's license.

2. Persons over the age of eighteen who are under the drinking age of twenty-one can lawfully enter an establishment like Winston's that serves liquor. *See* D.C.Code § 25–121(b–1). Winston's practice was to charge a higher entrance fee for those under twenty-one years of age.

3. At the time of his death, Adam was carrying a valid Virginia driver's license, a GW student

ID, a fake ID card falsely indicating his date of birth as January 7, 1968 (*i.e.*, twenty-five years old), a fake Florida ID card in the name of Gary Daniel Schatz stating his age as twenty-three, and a University of Florida student ID for Gary D. Schatz.

4. The toxicology report indicated that a blood alcohol level of 100 mg/dL for ethanol indicates intoxication and that anything greater than 500 mg/dL would be a fatal concentration. These levels are equivalent to .10 and .50 percent alcohol in the blood by weight, measured in grams per 100 milliliters. *See* PAUL C. GIANNELLI & EDWARD M. WINKELREID, 2 SCIENTIFIC EVIDENCE § 22–2 (3d ed.1999).

intoxication was a contributing factor in his death.

## B. The Trial Court Proceedings.

Adam Jarrett's parents filed a wrongful death and survival action against appellee, Woodward Brothers, Inc., the owner of the restaurant (hereinafter "Winston's"), based on the theory that it illegally and negligently served Adam Jarrett, a nineteen-year-old, underage patron who was already intoxicated, excessive amounts of alcohol which resulted in his death.[5] Winston's moved for summary judgment, arguing that it was entitled to judgment because: 1) D.C.Code § 25–121 and District of Columbia case law do not support a claim for negligence *per se* or ordinary negligence by or on behalf of an intoxicated patron; and 2) Adam Jarrett was contributorily negligent as a matter of law. The Jarretts responded that § 25–121 supports claims for both negligence and negligence *per se* by a patron such as Adam and that Winston's cannot avail itself of the defenses of contributory negligence or assumption of the risk because § 25–121 is a safety statute intended to protect underage and intoxicated persons such as Adam. The trial court granted summary judgment to Winston's "on the grounds that plaintiff's decedent [Adam Jarrett] does not fall within the protected class that the statute was designed to protect, and even if decedent could invoke the protections of the statute, his voluntary intoxication would constitute reckless conduct, thereby constituting a bar to recovery."

The judge acknowledged that the issue is one of first impression in this jurisdiction and framed it as: "whether an intoxicated underage patron of a restaurant can sue a restaurant for common law negligence or negligence *per se* under

[D.C.Code] § 25–121." Relying on our opinion in *Rong Yao Zhou,* and the order of Judge Patricia Wynn of the Superior Court of the District of Columbia in *Gavins v. Willard Intercontinental Hotel,* No. 93–CA–2569 (D.C.Super.Ct. Jan. 9, 1995), the trial court concluded that there is no cause of action that can be brought on behalf of the decedent[6] because 1) "there is no common law cause of action against a tavern owner" for injury resulting from negligently serving alcohol, and 2) "there is no statutory cause of action because an intoxicated minor is not a member of the class protected by § 25–121." Alternatively, it adopted the reasoning of the trial court in *Gavins* that the decedent would be barred as a matter of law by his own conduct from bringing suit under the exceptions of *Martin v. George Hyman Constr. Co.,* 395 A.2d 63, 68–74 (D.C.1978), permitting the defense of assumption of a statutorily—regulated risk. *See Gavins,* No. 93–CA–2569, order at 12–13.

On appeal, the Jarretts argue that § 25–121 sets the standard of care for this action because Adam is a member of the protected class and he suffered the type of harm the statute seeks to prevent.

## II.

When reviewing the trial court's grant of summary judgment, we apply the same standard as the trial court and conduct an independent review of the record. *See Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983). We review the trial judge's conclusion *de novo. See Seigel v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 745 A.2d 301, 303 (D.C.2000). The moving party has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Wyman v. Roesner,* 439 A.2d

---

5. The Jarretts also filed suit against the driver of the car that hit Adam, but subsequently voluntarily dismissed their claims against the driver.

6. The trial court did not separately address the Jarretts' survival action under D.C.Code

§ 12–101 (1995). On appeal, the parties do not argue that the propriety of the Jarretts' cause of action turns on whether it is considered a survival action under D.C.Code § 12–101 (1995) or an action for wrongful death under D.C.Code § 16–2701 (1997).

516, 519 (D.C.1981). In determining whether there is an issue of material fact, this court must view the record in the light most favorable to the non-moving party. *See Holland,* 456 A.2d at 815.

This appeal presents two issues of law for decision: 1) whether in this jurisdiction an intoxicated underage patron, or his or her parents, may sue a tavern keeper for common law negligence or negligence *per se* for violation of the standard established in D.C.Code § 25–121(b); and 2) even if § 25–121(b) establishes the standard of care toward such a claimant, whether the claimant's voluntary intoxication constitutes a bar to recovery. We answer the first inquiry in the affirmative, and the second in the negative.

■ We begin with the basic elements of a claim of negligence: the existence of a duty, violation of a standard of care, and injury resulting as a proximate cause of the violation. *See Kerrigan v. Britches of Georgetowne, Inc.,* 705 A.2d 624, 628 (D.C. 1997). At the heart of this case is whether the requisite duty and standard of care is supplied by D.C.Code § 25–121(b), of the Alcoholic Beverage Control Act ("ABC Act"), which states:

> No person being the holder of a retail license issued pursuant to this chapter shall permit on the licensed premises the consumption of alcoholic beverages, except as permitted in subsections (i) and (j) of this section, [7] by any person under the age of 21 years, by any intoxicated person, or any person of notoriously intemperate habits, or any person

who appears to be intoxicated. No licensee shall be liable to any person for damages claimed to arise from refusal to permit the consumption of any beverage on any premises licensed under this chapter.

D.C.Code § 25–121(b).[8]

In *Rong Yao Zhou* this court was presented with the question whether third parties injured as the result of the acts of an intoxicated driver state a cause of action against a restaurant that violated D.C.Code § 25–121(b) by serving liquor to the driver after he was already intoxicated. The court concluded that the statute, "while not itself providing a cause of action against tavern keepers by injured third parties, supplies the standard of care by which tavern keepers' conduct is to be measured under the common law." *Rong Yao Zhou,* 534 A.2d at 1272. In developing the analysis, the court noted that "[i]ncorporating into the common law a standard of care set by a legislative enactment is distinct from determining that a cause of action arises, by implication, under a statute. The latter task is a matter of statutory construction, requiring the court to determine whether the legislature intended something other than that which it provided expressly." *Id.* at 1273–74 (citation omitted).

In *Rong Yao Zhou* we expressly adopted the view articulated in *Marusa v. District of Columbia,* 157 U.S.App. D.C. 348, 353, 484 F.2d 828, 833 (1973), that "violation of an ordinance intended to promote safety can give rise to a negligence action." *Rong Yao Zhou,* 534 A.2d at 1273. We

---

**7.** Under section (i) a licensee may allow a person who was eighteen years old before September 30, 1986, when the drinking age was raised from eighteen to twenty-one years of age, to consume beer and light wines, and under section (j) a licensee is permitted to have a person at least eighteen years old sell, serve, or deliver alcohol on the premises. However, no one under the age of twenty-one may serve as a "bartender," as defined under the statute. *See* D.C.Code § 25–121(i)—(j).

**8.** Subsection (a) of § 25–121 provides:

Licenses issued hereunder shall not authorize the sale or delivery of beverages, except as permitted in subsections (i) and (j) of this section, to any person under the age of 21 years, either for his own use or for the use of any other person; or the sale, service, or delivery of beverages to any intoxicated person, or to any person of notoriously intemperate habits, or to any person who appears to be intoxicated. No licensee shall be liable to any person for damages claimed to arise from refusal to sell such alcoholic beverages.

determined that § 25–121(b) has a public safety purpose, *see* 534 A.2d at 1275, and that the injury suffered by the plaintiff in that case was "of the general type that the statute was intended to prevent, *i.e.* accidental injury to members of the public." *Id.* at 1277. As the *Rong Yao Zhou* court explained:

> We have no difficulty concluding that § 25–121(b) of the Alcoholic Beverage Control Act has a public safety purpose, and that its unexcused violation therefore constitutes negligence *per se, i .e.,* breach of the duty of care that tavern keepers owe to the public. Thus, when members of the public allege, as plaintiffs have here, that the tavern keeper's negligence was the legal cause of their injuries, they state a cause of action under District of Columbia law.

*Id.* at 1275. The *Rong Yao Zhou* court concluded that "the unexcused violation by a tavern keeper of D.C.Code § 25–121(b) by serving a person already intoxicated or apparently intoxicated, renders the tavern keeper negligent *per se,* and that where injuries are proximately caused to a member of the public by that violation the tavern keeper may be liable in damages." *Id.* at 1276.

*Rong Yao Zhou* considered and resolved two competing legal principles, adopting the view that issues like these are within the realm of the judiciary because they involve the application of traditional principles of common law negligence. 534 A.2d at 1273.[9] The other, articulated by the dissenting opinion in *Rong Yao Zhou,* is the "premise that this kind of remedy should be left to the political process." *Id.* at 1278 (Nebeker, J., dissenting). Some jurisdictions—not the District of Columbia—have enacted statutes expressly creating liability in these situations;[10] while

---

**9.** *Rong Yao Zhou* is consistent with the approach adopted by the courts of a number of jurisdictions. *See Marusa,* 157 U.S.App. D.C. 348, 484 F.2d 828; *Waynick v. Chicago's Last Dep't Store,* 269 F.2d 322 (7th Cir.1959); *Vance v. United States,* 355 F.Supp. 756 (D.Alaska 1973); *Deeds v. United States,* 306 F.Supp. 348 (D.Mont.1969); *Vesely v. Sager,* 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151 (1971), *superceded in part by* CAL. BUS & PROF. CODE § 25602(b) (Deering 1999); *Davis v. Shiappacossee,* 155 So.2d 365 (Fla.1963), *superceded in part by* FLA. STAT Ch. 768.125 (1999); *Ono v. Applegate,* 62 Haw. 131, 612 P.2d 533 (1980); *Colligan v. Cousar,* 38 Ill. App.2d 392, 187 N.E.2d 292 (1963); *Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847 (1966); *Lewis v. State,* 256 N.W.2d 181 (Iowa 1977); *Pike v. George,* 434 S.W.2d 626 (Ky.1968); *Adamian v. Three Sons, Inc.,* 353 Mass. 498, 233 N.E.2d 18 (1968); *Trail v. Christian,* 298 Minn. 101, 213 N.W.2d 618 (1973); *Munford, Inc. v. Peterson,* 368 So.2d 213 (Miss.1979); *Sampson v. W.F. Enters., Inc.,* 611 S.W.2d 333 (Mo.Ct.App.1980), *superceded in part by* MO. REV. STAT. § 537.053 (1999); *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959), *superceded in part by* N.J. STAT. ANN. § 2A:22A–5 (2000); *Berkeley v. Park,* 47 Misc.2d 381, 262 N.Y.S.2d 290 (N.Y.Sup.Ct.1965); *Mason v. Roberts,* 33 Ohio St.2d 29, 294 N.E.2d 884 (1973), *superceded in part by* OHIO REV. CODE ANN. §§ 4399.01, 4399.18 (Anderson 1999); *Campbell v. Carpenter,* 279 Or. 237, 566 P.2d 893 (1977); *Jardine v. Upper Darby Lodge*

*No.1973, Inc.,* 413 Pa. 626, 198 A.2d 550 (1964); *Mitchell v. Ketner,* 54 Tenn.App. 656, 393 S.W.2d 755 (1964), *superceded in part by* TENN. CODE ANN. § 57–10–102 (1989); *Callan v. O'Neil,* 20 Wash.App. 32, 578 P.2d 890 (1978). *See also* Joel E. Smith, Annotation, *Liability of Persons Furnishing Intoxicating Liquor for Injury to or Death of Consumer, Outside Coverage of Civil Damage Acts,* 98 A.L.R.3d 1230 (1980); Joel E. Smith, Annotation, *Common–Law Right of Action for Damage Sustained by Plaintiff in Consequence of Sale or Gift of Intoxicating Liquor or Habit–Forming Drug to Another,* 97 A.L.R.3d 528 (1980).

**10.** During the Prohibition era, prompted by the temperance movement, many state legislatures enacted so-called "dram shop acts ." These acts established the liability of tavern keepers regardless of where the injury to patrons or third parties occurred. Tim G. Caron, Note and Comment, *Kelly v. Gwinnell: Social Host Liability—How Great a Burden?,* 11 AM. J.L. & MED. 229, 235–36 (1985). "Dram shop" or "civil liability" acts, in effect in many states, create a cause of action against a tavern keeper for injuries caused by an intoxicated person. *See, e.g.,* ALA. CODE § 6–5–71 (1999) (establishing right of action in injured party against any person unlawfully selling or giving alcohol to an intoxicated person); ALASKA STAT. § 04.21.020 (Matthew Bender 1999) (establishing civil liability of licensee who unlawfully provides alcoholic

other jurisdictions have refused to extend liability without legislative mandate.[11] The Supreme Court of Delaware, considering the same issue before us in a case where the patron was served by the tavern while visibly intoxicated and was later hit by a car, articulated the following principle:

> We do not suggest that Dram Shop liability, or a responsibility akin to it, is undesirable public policy or that adop-

tion in Delaware would lend to illogical or unfair results. On the contrary, we think that a law which imposes some such responsibility on a licensee who wilfully or carelessly serves alcohol to an intoxicated patron has much to commend it. But, in our view, the General Assembly is in a far better position than this Court to gather the empirical data and to make the fact finding necessary to determine what the public policy

beverages and imposing strict liability on unlicensed sellers); CAL. BUS. & PROF. CODE § 25602.1 (Deering 1999) (establishing cause of action by or on behalf of any person injured due to a licensee selling or giving alcoholic beverage to any obviously intoxicated minor); COLO. REV. STAT § 13–21–103 (1997) (establishing right of action for selling or giving liquor to drunkard); FLA. STAT. Ch. 768.125 (1999) (establishing liability for "wilfully and unlawfully" selling "to a person who is not of lawful drinking age" or "knowingly serv[ing] a person habitually addicted to the use of . . . alcoholic beverages"); Mo. REV. STAT. § 537.053 (1999) (establishing liability where licensee has been convicted of serving someone underage or obviously intoxicated); N.J. STAT. ANN. § 2A:22A–5 (2000) (permitting civil liability of a tavern owner for serving "visibly intoxicated person" or "minor, under circumstances where the server knew, or reasonably should have known, that the person served was a minor"); OHIO REV. CODE ANN. §§ 4399.01, 4399.18, 4301.22(C), 4301.69 (Anderson 1999) (establishing right of action where injury occurred on premises of the liquor permit holder or parking lot under its control, or for any injury if a result of serving a "noticeably intoxicated person," "individual who habitually drinks intoxicating liquor to excess," or "underage person" when not accompanied by a parent, spouse, or legal guardian who is of legal age); TENN. CODE ANN. § 57–10–102 (1989) (establishing civil liability for selling to a minor).

11. As a general rule, the common law did not recognize a right of action against a seller of alcoholic beverages for injuries caused by an intoxicated person. See State v. Hatfield, 197 Md. 249, 78 A.2d 754 (1951); see generally Smith, supra note 9, Liability of Persons Furnishing Intoxicating Liquor, 98 A.L.R.3d 1230. The rationale for this rule was that drinking the liquor, not providing it, was the proximate cause of the injury. See id. at 1235. Maryland, the jurisdiction to which we usually look for our common law principles, see D.C.Code § 49–301 (1997), does not recognize a common law legal duty on the part of bar owners

to compensate either third parties or patrons who sustain injuries as a result of the consumption of alcoholic beverages served by the tavern keeper. See Felder v. Butler, 292 Md. 174, 438 A.2d 494, 499 (1981) (rejecting claim of liability against tavern keeper for injury to third party caused by intoxicated patron); Hatfield, 78 A.2d at 756 (same); Fisher v. O'Connor's, Inc., 53 Md.App. 338, 452 A.2d 1313, 1316 (Md.Ct.Spec.App.1982) (concluding that because Maryland common law did not recognize a cause of action against a tavern keeper for injuries sustained by third parties, absent a dram shop statute authorizing an action for damages, intoxicated patrons similarly can have no cause of action); see also Di Ossi v. Maroney, 548 A.2d 1361, 1364 (Del.1988) (noting that a private right of action premised upon "Dram Shop" principles should not be judicially created because, in Delaware, the alcoholic beverage industry has traditionally been governed by the legislature, and public policy implications should be addressed by the legislature); Oakes v. Megaw, 565 A.2d 914, 917 (Del.1989) (construing Delaware statute as not establishing a cause of action against a tavern keeper by a third party injured by an intoxicated patron); Wright v. Moffitt, 437 A.2d 554, 557 (Del. 1981) (legislative purpose of the Delaware statute is not to protect a patron who drinks alcohol from the consequences of his or her own intoxication but to protect the general public); VA. CODE ANN. § 4.1–304 (Michie 1999) (listing classes of persons to whom alcoholic beverages may not be sold); Webb v. Blackie's House of Beef, Inc., 811 F.2d 840, 841 (4th Cir.1987) (Virginia common law did not recognize dram shop liability where a patron becomes intoxicated and causes injury to a third party, including automobile accidents); Williamson v. Old Brogue, Inc., 232 Va. 350, 350 S.E.2d 621, 625 (1986) (holding that innocent third party injured by the intoxicated person was not a member of the class intended to benefit from the statute and that therefore violation of the statute neither constitutes negligence per se nor furnishes the basis for a civil action in damages).

should be as to a Dram Shop law, and the scope of any such law.

*Wright, supra* note 11, 437 A.2d at 556. *Rong Yao Zhou* clearly rejected that approach. *See* 534 A.2d at 1273; *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971) (a division of the court cannot overrule a prior decision of the court).

■■ In this jurisdiction, a statute creates civil liability "where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute." *Ceco Corp. v. Coleman,* 441 A.2d 940, 945 (D.C.1982) (quoting *Richardson v. Gregory,* 108 U.S.App. D.C. 263, 266, 281 F.2d 626, 629 (1960)). In such a case, "unexplained violation of that [statutory] standard renders the defendant negligent as a matter of law." *Id.* (quoting *Richardson,* 108 U.S.App. D.C. at 266, 281 F.2d at 629). Thus, in *Rong Yao Zhou* we expressly rejected the view that where violation of a statutory safety standard is alleged, only an express or implied statutory cause of action will be recognized, and adopted instead the approach applied by the court in *Marusa. See Rong Yao Zhou,* 534 A.2d at 1273. In *Marusa,* the court articulated the guidelines for when a statute creates civil liability:

It is settled law in this court that "violation of an ordinance intended to promote safety" can give rise to a negligence action .... Generally, the law or regulation should be one designed to promote safety; the plaintiff must be "a member of the class to be protected" by the statute; and the defendant must be a person upon whom the statute imposes specific duties.

157 U.S.App. D.C. at 353–54, 484 F.2d at 833–34 (citing *Whetzel v. Jess Fisher Management Co.,* 108 U.S.App. D.C. 385, 389, 282 F.2d 943, 947 (1960)). We have already determined that § 25–121(b) is designed to promote safety, and that breach of that statutory standard creates tavern keeper liability to innocent third-parties, who come within the protection of the statute. *See Rong Yao Zhou,* 534 A.2d at 1275. Applying the same analysis as in *Rong Yao Zhou* to this appeal, and viewing the facts in the light most favorable to the Jarretts, the record supports that Winston's violated § 25–121(b) by serving Adam Jarrett, an underage patron who appeared to be visibly intoxicated. The question that immediately presents itself is whether an intoxicated underage patron, such as Adam Jarrett, like the third parties injured in *Rong Yao Zhou,* also is a "member of the class" that the statute was designed to protect. We hold that he is.[12]

---

**12.** We are aware that other Superior Court judges, in addition to the trial judge in this case, have rejected claims of liability by patrons injured because of intoxication. *See, e.g., Gavins,* No. 93–CA–2569, order at 10; *Clevenger v. District of Columbia,* 106 Daily Wash. L. Rptr. 1561 (D.C.Super.Ct. July 11, 1978) (overruled by *Rong Yao Zhou* ). The trial judge in this case relied on *Gavins,* in which Judge Patricia Wynn granted summary judgment for the tavern keeper against the negligence claims of its three employees who were seriously injured in an automobile accident after becoming severely intoxicated at a post-work party at a hotel. The trial judge reasoned that the case before her was distinguishable from *Rong Yao Zhou,* and other cases allowing recovery to third-party plaintiffs, because "the plaintiffs in the case at bar are not third-parties claiming negligence on the part of both the intoxicated driver and the tavern owner, but are the intoxicated drivers themselves." *Gavins, supra,* C.A. No. 93–2569 at 6. Specifically, the trial court concluded that although the ABC Act has a public service purpose creating a duty of care to the public, as established by this court in, those cases "do not expressly include within the class of protected persons an intoxicated driver and passengers who voluntarily accompany him." *See id.* She voiced a concern presented by the complex question before us: "To include the patron within the protected class would have the practical affect [sic] of relieving him of responsibility for his actions when he is injured as a result of his voluntary intoxication ." *Id.* The trial judge further reasoned that adhering to established principles of individual responsibility, intoxicated persons should only be included within the protected class of the Act if there is a clear mandate from the legislature. *See id.* at 7.

We reach that conclusion because the legislature has expressed a policy, in unequivocal terms, that requires tavern keepers not to "permit on the licensed premises the consumption of alcoholic beverages" by underage and intoxicated persons. D.C.Code § 25–121(b). The legislature has authorized stiff penalties for violation of the statute, from fines of up to $1,000 and imprisonment up to one year, *see* D.C.Code § 25–121(a), to suspension and revocation of the liquor license, *see* D.C.Code § 25–118(a). Although *Rong Yao Zhou* involved injuries resulting from the conduct of a drunk driver, it did not preclude application of its reasoning to injuries resulting from the actions of an intoxicated pedestrian who is injured by a car. As the court noted:

> Although the facts before us involve accidental injuries resulting from a motor vehicle accident, a similar analysis would be appropriate for other types of accidental injuries associated with the excessive consumption of alcohol.

534 A.2d at 1275 n. 5. Here, as in *Rong Yao Zhou,* the issue is whether, assuming that the tavern keeper violated the standard established by the legislature, it breached a duty owed to the claimant.

We recognize that a voluntarily-intoxicated underage patron is not as appealing a claimant as the innocent third parties involved in *Rong Yao Zhou.* Indeed, such a person also violates the law and, at the time of Adam Jarrett's death, could be imprisoned up to one year, fined up to $1,000, and have driving privileges suspended. *See* D.C.Code §§ 25–130, –132(a) (1996).[13] Setting aside for the moment the issue of whether the intoxicated person's own fault in causing his or her injuries precludes the tavern keeper's liability, which we discuss *infra,* we conclude that to exclude intoxicated underage patrons from the zone of the statute's protection would be contrary to legislative intent. In so doing, we recognize, as we did in *Rong Yao Zhou,* that

> [l]iquor control laws frequently have multiple purposes, ... and our courts have held that a liberal and reasonable construction shall be given these statutes in view of their remedial objects and purposes so as to effect these purposes. The courts of other jurisdictions, examining prohibitions nearly identical to § 25–121(b), have concluded that such an enactment unquestionably reflects a *legislative concern for the clear dangers surrounding the sale or provision of alcohol to those who cannot safely consume it.* Violation of statutes that prohibit sale of alcoholic beverages to intoxicated persons or to minors has been the most common basis upon which courts have found breach of the duty of care that is necessary for imposing tort liability on tavern keepers for resulting injuries.

534 A.2d at 1276 (citations, alterations, quotation marks, and footnote omitted) (emphasis added).

The statute before us imposes a number of duties on the defendant, specifically, and most relevant to this appeal, the obligation not to "permit" the consumption of alcohol by underage or intoxicated persons. *See* D.C.Code § 25–121(b) (1996). In order to determine whether Adam Jarrett was a member of the class sought to be protected by the statute, we turn to a review of the legislative history of § 25–121.

### Legislative History of D.C.Code § 25–121.

The District of Columbia Alcoholic Beverage Control Act was signed into law on January 24, 1934, in the post-Prohibition era. *See* District of Columbia Alcohol Beverage Control Act, Pub.L. No. 73–85,

---

**13.** In 1997, enactment of the Alcoholic Beverage Underage Penalties Amendment Act, D.C. Law 11–187, § 2, 43 D.C.Reg. 4515 (1997), lowered the penalty to a fine of not more than $300, and, in default in the payment of the fine, imprisonment not exceeding 30 days. *See* D.C.Code § 25–130(b–1) (Supp.1999). The amendments also provided for imposition of a civil fine as an alternative sanction. *See* § 25–130(b–2) (Supp.1999).

48 Stat. 319 (1934) (codified as amended at D.C.Code §§ 25–101 to –148 (1996)). The first incarnation of what is today's § 25–121(b), section 20 of Public Law No. 73–85, stated:

> Sec. 20. Licenses issued hereunder shall not authorize the *sale or delivery* of beverages, with the exception of beer and light wines, to any person under the age of twenty-one years, or beer or light wines, to any person under the age of eighteen years, either for his own use or for the use of any other person; or the sale of beverages to any intoxicated person or to any person of notoriously intemperate habits or to any person who appears to be intoxicated; and ignorance of the age of any such minor shall not be a defense to any action instituted under this section. No licensee shall be liable to any person for damages claimed to arise from refusal to sell such alcoholic beverages.

48 Stat. at 331 (emphasis added). Among the concerns of Congress was to ensure that the Act would "promote temperance," "prevent the return of the saloon" and "keep alcohol traffic in the open." 78 Cong. Rec. H268 (daily ed. Jan. 9, 1934) (statement of Rep. Patman). Twenty years later, the Congress increased the liquor licensees' obligations under the statute by prohibiting them from *permitting* liquor consumption by underage and intoxicated persons on licensed premises, not only *selling or delivering* liquor to such persons: [14]

> No person being the holder of a license issued section under section 11(1) of this Act shall *permit* on the licensed premises the consumption of alcoholic beverages, with the exception of beer and light wines, by any person under the age of twenty-one years, or permit the consumption of beer and light wines by any person under the age of eighteen years; or the consumption of any beverage by any intoxicated person, or any person of notoriously intemperate habits, or any person who appears to be intoxicated; and ignorance of the age of any such minor shall not be a defense to any action instituted under this section. No licensee shall be liable to any person for damages claimed to arise from refusal to permit the consumption of any beverage on any premise licensed under section 11(1) of this Act.

District of Columbia Law Enforcement Act of 1953, Pub.L. No. 83–85, § 404(g), 67 Stat. 90, 103–04 (codified as amended at D.C.Code § 25–121(b)) (emphasis added).[15]

In 1981, the Council of the District of Columbia for the first time undertook to amend the ABC Act when it passed the Alcoholic Beverage Control Amendments Act of 1982. *See* D.C. Law No. 4–157, 29 D.C.Reg. 3617 (1982). Among the primary purposes of the law were to give the Mayor authority to prescribe rules and regulations to carry out the purposes of the ABC

---

**14.** The prohibition against selling or delivering liquor to underage and intoxicated persons was maintained, and is codified at D.C. § 25–121(a) (1996):

> (a) Licenses issued hereunder shall not authorize the sale or delivery of beverages, except as permitted in subsections (i) and (j) of this section, to any person under the age of 21 years, either for his own use or for the use of any other person; or the sale, service, or delivery of beverages to any intoxicated person, or to any person of notoriously intemperate habits, or to any person who appears to be intoxicated. No licensee shall be liable to any person for damages claimed to arise from refusal to sell such alcoholic beverages.

**15.** The statute currently provides:

> No person being the holder of a retail license issued pursuant to this chapter shall permit on the licensed premises the consumption of alcoholic beverages, except as permitted in subsections (i) and (j) of this section, by any person under the age of 21 years, by any intoxicated person, or any person of notoriously intemperate habits, or any person who appears to be intoxicated. No licensee shall be liable to any person for damages claimed to arise from refusal to permit the consumption of any beverage on any premises licensed under this chapter.
> D.C.Code § 25–121(b) (1996).

Act and to bring certain sections of the act and regulations into conformity with federal law. *See* COMMITTEE ON PUBLIC SERVICES AND CONSUMER AFFAIRS, COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL 4–218, "ALCOHOLIC BEVERAGE CONTROL AMENDMENTS ACT OF 1981" 2, (1982). One year later, the Council passed the Alcoholic Beverage Anti-discrimination Act of 1984, *see* D.C. Law No. 5–106, 31 D.C.Reg. 3381 (1984), which added several new subsections requiring, *inter alia*, that licensees make a "good faith effort" to verify that patrons are of drinking age, post signs notifying the public of the legal drinking age, and refuse to sell or serve liquor to anyone who fails to provide a valid identification document displaying proof of legal drinking age. *See* D.C.Code § 25–121.[16]

In 1986, the Council raised the legal drinking age in the District to twenty-one years in response to federal financial incentives to jurisdictions that raised the minimum drinking age. *See* District of Columbia Alcoholic Beverage Control Act Legal Drinking Age Amendment Act of 1986, D.C. Law No. 6–178, 33 D.C.Reg. 7654 (1986). In its report to the Council, the Committee on Consumer and Regulatory Affairs explained:

> Congress, in recent years, has exerted tremendous pressure upon the states to limit the consumption of alcoholic beverages by persons under the age of 21.

**16.** These additional sections provide:

(c) Except as otherwise permitted by law, no licensee shall deny admittance to any person displaying proof of age in the manner prescribed in subsection (d) of this section. No licensee shall require proof of age to discriminate on any ground prohibited by Chapter 25 of Title 1 [prohibiting discrimination based on race, color, religion, national origin, sex, age, disability and for other reasons].

(d)(1) A licensee shall refuse to sell, serve, or deliver an alcoholic beverage to any person who, upon request of the licensee, fails to produce a valid identification document displaying proof of legal drinking age as required by this section.

(2) For the purpose of this subsection, the term "valid identification document" means an official identification issued by an agency of government (local, state, federal, or foreign) containing, at a minimum, the name, date of birth, signature, and photograph of the bearer.

(e) Each retail licensee shall post a notice on the licensed premises of the requirements of subsection (d) of this section and of any further stipulations the Board may require, including the posting of the current legal drinking ages. The notice shall be posted in a place clearly visible from the point of entry to the licensed premises and shall be maintained in good repair.

(f) A licensee or his designee shall make a good faith effort to ascertain whether any person to whom he sells, delivers, or serves alcoholic beverages is of legal drinking age as provided by law. Any person who supplies proof of age showing his or her age to be the legal drinking age as provided in subsection (d) of this section shall be

deemed to be of legal drinking age and the licensee shall not be liable solely because the person is not of legal drinking age as provided in subsections (a) and (b) of this section.

(g)(1) Upon finding that a licensee has violated subsection (c), (d), or (e) of this section, the Board shall:

(A) Upon the first violation, fine the licensee not less than $1,000 and not more than $2,000, or suspend the license for 10 consecutive days;

(B) Upon the second violation, fine the licensee not less than $2,000 and not more than $4,000 and suspend the license for 20 consecutive days; and

(C) Upon the third violation and each subsequent violation, fine the licensee not less than $4,000 and not more than $10,000 and suspend the license for 30 consecutive days, or revoke the license.

(2) In the event of revocation or suspension of the license pursuant to this subsection the Alcoholic Beverage Control Division shall post a notice in a conspicuous place on the exterior of the premises stating the reason for the revocation or suspension. The notice shall remain posted through the prescribed dates. The licensee shall immediately notify the Alcohol Beverage Control Division if the notice is removed or defaced. Failure of the licensee to notify the Alcohol Beverage Control Division may result in the extension of the prescribed period of revocation or suspension.

(h) The rights and remedies contained in this section shall not be construed to limit or exclude other rights and remedies provided by law with respect to discrimination. D.C.Code § 25–121.

The drinking age was lowered in many states in the early 1970's, during a time when the lowering of the voting age from 21 to 18 and the war in Vietnam focused attention on the rights of young adults. Lately, the pendulum has swung in the opposite direction and the result has been that 43 states have adopted a 21–year minimum drinking age—up from 23 states in 1984. This action reflects the nation's growing concern over the number of drivers under 21 who are involved in serious motor vehicle crashes after consuming alcohol. It is argued that persons under the age of 21 are inexperienced drivers and thus more likely than any other age group to have their driving significantly impaired by even small quantities of alcohol.

COMMITTEE ON CONSUMER AND REGULATORY AFFAIRS, COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL NO. 6–508, THE "DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL ACT LEGAL DRINKING AGE AMENDMENT ACT OF 1986," 3 (1986).

The District of Columbia Municipal Regulations further implemented the prohibition against a license holder's permitting liquor consumption by underage patrons by requiring the licensee to "make a good faith effort to ascertain whether any person to whom he or she sells, delivers, or serves alcoholic beverages is of legal drinking age as provided by law." 23 DCMR § 903.13, 35 D.C.Reg. 5015 (1988). The regulations also provide that the licensee "shall not be liable solely because the person is not of the legal drinking age, unless the licensee ... knew or should have known, based on the totality of the circumstances, that the person was not of legal drinking age." *Id.*

In November 1986, one month after the legal drinking age was raised to twenty-one years, the Council undertook a further revision of the ABC Act, *see* District of Columbia Alcoholic Beverage Control Act Reform Amendment Act of 1986, D.C. Law No. 6–217, 34 D.C.Reg. 907 (1987), making it clear that it was concerned not only with underage drunk drivers, but with public safety and health more generally:

Alcohol is a drug which is not only legal but also freely advertised as alluring. Yet it is a drug of abuse, with the capacity to cause intoxication and physical and psychological addiction. Used in moderation, alcohol may cause no harm; *used to excess, it can and frequently does contribute to irresponsible actions, criminal misconduct, and serious and life-threatening physical disease. Thus, there is a clear public policy interest in establishing a more extensive regulatory scheme* for the distribution of alcoholic beverages than for other goods and services.

COMMITTEE ON CONSUMER AND REGULATORY AFFAIRS, COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL NO. 6–504, "DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL ACT REFORM AMENDMENT ACT OF 1986" 8 (1986) (emphasis added). The Reform Amendments Act added new subsection (b–1) to § 25–121, which strengthened the law with respect to minors by prohibiting the presence of persons under the age of eighteen on the premises of liquor retailers during school hours, with the intent

to prevent persons of school age from entering liquor stores, in recognition of the seriousness of alcohol abuse among young people and the serious loitering problems that often result. This provision serves to diminish the exposure of young people to the sale of alcohol and provides an additional mechanism to prevent the illegal sale of alcoholic beverages to underage persons.

*Id.* § 12 at 53.

The history of legislative amendments to the ABC Act thus shows the legislature's broadening concern from morality and public order, to safety concerns resulting from drunk driving by those under twenty-one years of age, to the danger to the safety and health of those who consume alcohol, particularly those who abuse it and those who are underage. Although the matter is not free from doubt, we conclude

that, in the context of this legislative trend and the statutory language mandating that licensees are not to "permit consumption" by underage and intoxicated persons, Adam Jarrett, who was both an underage patron and, if the testimony of his companions is credited, visibly abusing alcohol at the time, was a member of the class the legislature sought to protect.[17] We apply the basic principle articulated in *Ceco Corp.* that "where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, *unexplained* violation of that standard renders the defendant negligent as a matter of law." 441 A.2d at 945 (citing *Richardson,* 108 U.S.App. D.C. at 266, 281 F.2d at 629).[18] Therefore, Adam Jarrett, or his parents on his behalf, state a cognizable claim that Winston's breached a duty to him if it violated the standard established in D.C.Code § 25–121(b).[19]

### III.

Having determined that D.C.Code § 25–121(b) provides the basis for civil liability by a tavern owner to an injured underage intoxicated patron, we turn to consider whether, as the trial court determined, the claimant's own unlawful actions constitute contributory negligence or assumption of the risk that, as a matter of law, would bar recovery. We hold that they do not.

The District of Columbia is one of the few jurisdictions in which the claimant's contributory negligence can act as a complete defense to the defendant's liability for negligence. *See Felton v. Wagner,* 512 A.2d 291, 296 (D.C.1986).[20] The common law defense of contributory negligence is not available, however, to defeat liability for negligent conduct that contravenes a statutory mandate because "[s]tatutes and regulations should not be overborne by the common law." *Martin,* 395 A.2d at 68–69. We have determined that the statute at issue here, § 25–121(b), has as its purpose not only the safety of the general public but also the health and safety of the patrons who frequent bars and restaurants that serve alcohol. Thus, a patron's contributory negligence is not a bar to recovery for negligent violation of the statutory standard.

Nonetheless, we have recognized that in certain circumstances the claimant's assumption of risk could, unlike the defense of contributory negligence, preclude liability even when predicated on violation of a statutory mandate. *See Martin,* 395 A.2d at 74. In this case, it is argued that, by

---

17. Adam Jarrett, who was nineteen when he went to Winston's, falls within the group that the statute prohibits from drinking, but is nonetheless able to enter a licensed establishment. In the context of the statutory scheme, he is between minor children under eighteen who are accorded the most protection by the statute, and those over twenty-one, who are not prohibited from consuming alcohol.

18. The statutory prescription establishes the standard against which the defendant's behavior is measured. Thus, violation of the statutory standard is negligence *per se. See Otis Elevator Co. v. Tuerr,* 616 A.2d 1254, 1259 (D.C.1992). We have emphasized that, to result in liability, violation of the statutory standard must be "unexplained," to underscore that liability is based on negligence, not strict liability. *See Ceco Corp.,* 441 A.2d at 945.

19. As noted above, the statute and regulations set out the scope of Winston's obligation, and expressly absolve Winston's of liability if it made a "reasonable effort," as defined in the regulations, to ascertain Adam Jarrett's age. Our legal conclusion that the Jarretts state a claim is based only on the legal analysis that a claim can be presented by a plaintiff such as Adam Jarrett or his parents. We express no opinion with respect to the merits of the claim or any defense that the standard was in fact met in this case. See *infra* note 29.

20. The great majority of jurisdictions have some sort of comparative negligence regime. *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 67, at 471 (5th ed. 1984 & Supp.1988).

consuming alcohol to the point of intoxication earlier in the evening and asking for more once he arrived at Winston's, Adam Jarrett assumed the risk of his intoxicated state; in other words, that he acted "with willful, wanton, or reckless disregard for his own safety," *id.*, so as to "relieve [Winston's of] 'all legal' duty" to him. *Id.* at 71 (citation omitted).

In evaluating the issue, we note the doctrinal underpinnings of assumption of risk. Unlike contributory negligence, which is based on the fault of the plaintiff, assumption of the risk "stands on a different theoretical footing." *Sinai v. Polinger Co.,* 498 A.2d 520, 524 (D.C.1985). "The plaintiff is not barred from recovering damages because of his 'fault,'" but on a theory that the plaintiff has "consciously relieved the defendant of any duty which he otherwise owed the plaintiff. Being under no duty, the defendant may not be charged with negligence." *Id.* Because the plaintiff is deemed to have waived the defendant's duty or consented to its breach, assumption of risk is applied only where "the plaintiff ... subjectively know[s] of the existence of the risk and appreciate[s] its unreasonable character." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 496D (1965)). Where the duty which the defendant claims to have been waived by an injured plaintiff is imposed by statute, as here, we scrutinize whether the plaintiff voluntarily consented to incur the risk from which the statute sought to protect him. To make that case, a defendant must prove:

> (1) that there was available to the [plaintiff] an alternative to encountering the risk; (2) that the [plaintiff's] choice between the risk and such alternative was fully voluntary; (3) that such alternative afforded the [plaintiff] the safety mandated by statute, rule or regulation; and (4) that the [plaintiff's] determination to encounter the risk was, under the

circumstances, made with willful, wanton, or reckless disregard for his own safety.

*Martin,* 395 A.2d at 74. Thus, despite the fact that the legislature has deemed certain classes of persons in need of statutory protection, in certain circumscribed circumstances a defendant may be relieved of liability for breaching the statutory requirement if a member of the protected class has voluntarily chosen to encounter the risk from which the legislature sought to protect that person.

On the record before us, we cannot conclude, as our dissenting colleague suggests, that Adam Jarrett's conduct (assuming that a jury found it to be as the dissent characterizes) comes within the circumscribed circumstances of *Martin* so as to relieve Winston's of its statutory duty not to permit his drinking while at Winston's.[21] The testimony of Adam's companions is that Adam had done some drinking earlier and was already intoxicated when he arrived at Winston's, where he continued to drink significant amounts of alcohol to the point of becoming "ridiculously drunk." In such a condition, which would have been apparent to Winston's, Adam was not able to make a "fully voluntary" choice to discontinue drinking. Moreover, in this case, there was no "alternative" that afforded the same protection as the statutory mandate. Without the protective intervention that the statute imposes on Winston's agents not to "permit [Adam's] consumption" of alcohol, Adam was on his own, at best dependent on his (also underage) companions to deflect him from further drinking. Thus, on the record before us, the defendants would not satisfy at least two of the four factors required by *Martin* to establish assumption of the risk in the face of a statutory obligation to protect from the risk purportedly assumed.

21. We note that, in his dissent, Judge Kern would continue the case to trial, and does not adopt the trial court's view that summary judgment was proper because Adam Jarrett's conduct precluded relief as a matter of law.

To preclude the liability of a tavern keeper on the theory that acceding to the request of an intoxicated underage patron as a matter of law relieves it of its statutory duty would strike at the heart of what the legislature intended to accomplish, which is precisely to impose an obligation on the liquor licensee, *independent of the wishes of the patron*, not to "permit ... consumption" of alcohol by those persons that the licensee knows, or should know, to be underage or intoxicated. The statute expressly requires that licensees make a good faith effort to ascertain whether patrons are of drinking age. Behind the statutory prohibition against permitting the consumption of alcohol by underage and intoxicated persons on licensed premises lies a legislative determination that such persons do not make prudent decisions for themselves as to the reasonable consumption of alcohol.[22] As the report of the Committee on Consumer and Regulatory Affairs expressed in November 1986, "used to excess, [alcohol] can and frequently does contribute to *irresponsible actions [and] criminal misconduct.*" REPORT ON BILL 6–504, *supra*, at 8. Thus, the legislature has declared the policy that *no* alcohol is to be consumed by underage and intoxicated persons, and that liquor licensees have an obligation not only not to sell or deliver liquor to them, *see* D.C.Code § 25–121(a), but also not to "permit ... consumption" by patrons who are underage or intoxicated, *see* D.C.Code § 25–121(b).[23] Therefore, we hold that assumption of the risk is inapplicable to relieve a licensee who has violated the statutory standard of liability because its necessary premise that a plaintiff have knowingly and voluntarily encountered a known risk is antithetical to the legislative policy determination that underage and intoxicated persons need to be protected from their choice when it comes to the consumption of alcohol, which is prohibited by the statute.[24] Adam Jarrett was both underage and, the Jarretts would argue, already visibly intoxicated when he was served at Winston's. At that point, with his youthful judgment already clouded by alcohol, the statutory scheme's design was that the licensee should step in to preclude him from drinking further in the licensed establishment. Instead, it is alleged, Winston's continued to serve him alcohol with fatal consequences. Because we hold that the Jarretts state a claim for negligence against the tavern keeper for violation of the standard of care set forth in D.C.Code § 25–121(b), and that their son's actions do not, as a matter of law, preclude liability, we reverse the grant of summary judgment and remand the case for further proceedings consistent with this opinion.[25]

*Reversed and remanded.*

22. The legislative recognition that prompted the legislature to impose an obligation on licensees does not preclude the imposition of sanctions on underage persons who do consume alcohol as a further means of curbing underage drinking.

23. Although we are not implying a cause of action under the statute, it is significant that the statute expressly exonerates licensees from liability for serving underage drinkers *only* in the case where the licensee reasonably believes that the patron is of drinking age. *See* D.C.Code § 25–121(f).

24. Thus this case does not "require us to decide the issue of reckless conduct by a plaintiff balanced against reckless conduct of a defendant." *Washington Metro. Area Transit Auth. v. Johnson*, 726 A.2d 172, 176 (D.C. 1999) (en banc). See *supra* note 1. We note, also, that there is no contention that Adam Jarrett's activities were intentional in the sense that he sought to die by being struck by a car either when he began his misguided drinking, probably to have a good time, or when he wandered out of Winston's, drunk and alone, into the streets of Georgetown. *Cf. id.* (holding that doctrine of last clear chance did not apply where plaintiffs' decedent jumped into the path of an oncoming subway train.)

25. As in *Rong Yao Zhou*, we caution that our holding does not resolve a number of factual issues subject to proof at trial. *See* 534 A.2d at 1277. This includes whether Winston's violated the statutory standard. In this regard, we note that Adam was in possession of fake ID cards, see *supra* note 3, and it may be that Winston's served him believing that he

KERN, Senior Judge, concurring and dissenting.

I concur with the majority's holding that "D.C.Code § 25–121(b) provides the basis for civil liability by a tavern owner to an injured underage intoxicated patron" and, as such, a tavern keeper may be sued for common law negligence or negligence *per se* for violation of this standard. I respectfully dissent from the majority's holding on the second issue in this appeal that "assumption of risk is inapplicable in this context because an underage, intoxicated person is deemed incapable, as a matter of law, of relieving the tavern keeper of the duty which the statute imposes."

In this jurisdiction, we have recognized the proposition that despite the choice by the legislature to extend protection over a particular class of persons, such as underage patrons of taverns and bars, an individual in a protected class may choose to act in such an egregiously reckless manner as to require that such individual take responsibility for his own actions. *See Martin v. George Hyman Constr. Co.*, 395 A.2d 63 (D.C.1978). It is well established that a person can impliedly accept the risk of harm arising from the defendant's conduct "by voluntarily electing to proceed, with knowledge of the risk, in a manner which will expose him to it." RESTATEMENT (SECOND) OF TORTS § 496C (1965). Thus, as long as the choice is truly voluntary, such an assumption of risk can act as a bar to recovery. This court has said:

> It thus becomes critical that the plaintiff's consent to what would otherwise be the defendant's negligence be given freely and without any element of coercion attributable to the defendant, for "the risk is not assumed where the conduct of the defendant has left [the plaintiff] with no reasonable alternative."

*Martin, supra*, 395 A.2d at 72, *citing* W. PROSSER, LAW OF TORTS 451 (4th ed.1971).

The record reflects that Jarrett, a 19 year-old George Washington University student, knowingly made the choice to drink liquor before he went to Winston's and *then* chose to go to Winston's even though he was under the legal age on the night of September 16, 1993. Further, Jarrett voluntarily carried on his person false identifications to enable him to obtain access to bars. He was in control of these decisions; no one coerced him or tricked him into obtaining false documents and then drinking excessively that night.

Not only did Jarrett carry three fake identifications on his person, indicating an intent to flaunt the law and consume alcohol despite his age, and consumed four to six cups of beer prior to going to Winston's, but Jarrett also attempted to purchase alcohol at another restaurant before going to Winston's. While at Winston's, Jarrett consumed at least three shots of alcohol, and four or five bottles of beer. These actions sufficiently establish that Jarrett willfully set out to become, in the words of a witness, "ridiculously drunk" that night.

The reckless conduct exhibited by Jarrett is not only relevant in determining his assumption of the risk, but such conduct needs to be "balanced against [the] reckless conduct of [Winston's]." *Washington Metro. Area Transit Auth. v. Johnson*, 726 A.2d 172, 176 (D.C.1999)(en banc). Although it is true that Winston's was negligent in violating the duty of care established in D.C.Code § 25–121(b), it is sad but true that Jarrett's own actions were clearly reckless and willful. Under these particular circumstances, Jarrett's wanton and reckless behavior should be viewed as an assumption of risk, and therefore a bar to recovery.

Allowing assumption of risk to act as a complete bar to recovery when a person

---

was over twenty-one years old. Even so, of course, this would not answer the question whether Winston's violated the statute by serving a patron who, according to the testimony of his companions, appears to have been visibly intoxicated. With respect to proximate causation, the time, location and circumstances of the car accident and their nexus to Adam's drinking at Winston's is for the jury. *See id.*

becomes "ridiculously drunk" voluntarily and later causes harm to himself is consistent with the tort principles to which this jurisdiction adheres. As this court has recognized, these principles serve to "enforce the disincentives to voluntary self-destruction on which society, through civil law, insists." *Washington Metro. Area Transit Auth. v. Johnson, supra,* 726 A.2d at 175. While *Johnson* involved a case of suicide, the choice to go to extreme lengths to drink one's self to oblivion and then walk at least three blocks to the middle of a busy city thoroughfare is no less a voluntary choice of self-destruction.

Accordingly, I agree with the majority that Jarrett was a member of the group of persons the legislature sought to protect under D.C.Code § 25–121(b), and therefore, this case should be remanded for further findings of fact. If the jury finds that Jarrett voluntarily made the choice to act in a reckless and self-destructive manner on the night of September 16, 1993, it can decide to consider the doctrine of the assumption of risk. Thus, if the jury finds that Jarrett did indeed assume the risk of his actions, any recovery against Winston's for its negligence in serving him would be denied.